**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-6073

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GERALD ADRIAN WHEELER, a/k/a Bay-Bay,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., District Judge. (3:06-cr-00363-RJC-3; 3:11-cv-00603-RJC)

Argued: January 25, 2018                    Decided: March 28, 2018

Before KING, FLOYD, and THACKER, Circuit Judges.

Vacated and remanded by published opinion. Judge Thacker wrote the opinion, in which Judge King and Judge Floyd joined.

**ARGUED:** Ann Loraine Hester, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Eric J. Feigin, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Ross Richardson, Federal Public Defender, Interim, FEDERAL PUBLIC DEFENDER WESTERN DISTRICT OF NORTH CAROLINA, Charlotte, North Carolina, for Appellant. Noel J. Francisco, Solicitor General, UNITED STATES DEPARTMENT OF

JUSTICE, Washington, D.C.; Jill Westmoreland Rose, United States Attorney, Charlotte, North Carolina, Amy E. Ray, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.

THACKER, Circuit Judge:

In the district court, Gerald Wheeler ("Appellant") sought to have his habeas corpus petition heard on the merits by means of the "savings clause" per 28 U.S.C. § 2255(e). The savings clause provides that an individual may seek relief from an illegal detention by way of a traditional 28 U.S.C. § 2241 habeas corpus petition, if he or she can demonstrate that a § 2255 motion is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). The district court denied Appellant's savings clause request and dismissed his § 2241 petition.

But Appellant satisfies the requirements of the savings clause as dictated by our decision in *In re Jones*, 226 F.3d 328 (4th Cir. 2000), because a retroactive change in the law, occurring after the time for direct appeal and the filing of his first § 2255 motion, rendered his applicable mandatory minimum unduly increased, resulting in a fundamental defect in his sentence. We thus vacate the district court's judgment and remand with instructions that Appellant's § 2241 petition be considered on the merits.

I.

A.

*Conviction, Sentence, and Direct Appeal*

In September 2006, a grand jury in the Western District of North Carolina returned a multi-defendant superseding indictment charging Appellant with conspiracy to possess with intent to distribute at least 50 grams of crack cocaine and 500 grams of powder cocaine, in violation of 21 U.S.C. § 841(b)(1)(B) ("Count One"); possession with intent to distribute at least 5 grams of crack cocaine ("Count Five"); using and carrying a

3

firearm during and in relation to a drug trafficking crime ("Count Six"); and being a felon in possession of a firearm ("Count Seven"). The Government also filed an information pursuant to 21 U.S.C. § 851, seeking an enhanced penalty based on Appellant's 1996 North Carolina conviction for possession of cocaine (the "1996 Conviction").[1] On April 17, 2007, Appellant pled guilty to Counts One, Six, and Seven of the indictment. His plea agreement provided that as to Count One, "Due to . . . the [§ 851 information], Defendant is facing not less than ten years imprisonment up to a maximum of life imprisonment." Plea Agreement, *United States v. Wheeler*, No. 3:06-cr-363 (W.D.N.C. filed April 3, 2007), ECF No. 66 at 1.

In March 2008, the district court sentenced Appellant to 120 months of imprisonment, the statutory mandatory minimum, on Count One.[2] In so doing, it determined that the 1996 Conviction was a "felony drug offense," and as a result, Appellant's enhanced statutory range was 10 years to life in prison. *See* 21 U.S.C. § 841(b)(1)(B) ("If any person commits . . . a [§ 841(b)(1)(B)] violation after a prior conviction for a *felony drug offense* has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment . . . ." (emphasis supplied)); *id*. § 802(44) (defining "[f]elony drug offense" as "an offense that is punishable by imprisonment for more than one year under any

---

[1] The information also cited a 1998 conviction for cocaine trafficking, but that conviction was later overturned and is not at issue in this appeal.

[2] Appellant also received a concurrent 70 month sentence on Count Seven and a consecutive 60 month sentence on Count Six, for a total sentence of 180 months.

[state] law . . . that prohibits or restricts conduct relating to narcotic drugs"). Without the 1996 Conviction, Appellant's United States Sentencing Guidelines ("Guidelines") range would have been 70–87 months, and his statutory sentencing range would have been 5 to 40 years. The district court noted, "[T]he sentence that is required to be imposed upon you is a harsh sentence. It's a mandatory minimum sentence. I don't have any discretion in that area." J.A. 85–86.[3] We affirmed Appellant's conviction and sentence. *See United States v. Wheeler*, 329 F. App'x 481 (4th Cir. 2009) (per curiam).

B.

*First § 2255 Motion*

On June 29, 2010, Appellant filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. He alleged that his counsel was ineffective for, inter alia, failing to argue that the 1996 Conviction did not qualify to enhance his sentence. *See* J.A. 116–17 ("[C]ounsel in this matter[] allowed an error to proceed uncorrected . . . . The term of [the 1996 Conviction] didn't exceed one year[;] the maximum punishment that he could receive was[] eight months . . . .").

The district court dismissed the § 2255 motion on March 17, 2011, and denied a certificate of appealability ("COA"), explaining that Appellant's argument was foreclosed by this court's decision in *United States v. Harp*, 406 F.3d 242 (4th Cir. 2005), and this court's panel decision in *United States v. Simmons*, 635 F.3d 140 (4th Cir. 2011).

---

[3] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

5

*See* J.A. 204.  Those decisions held, "[T]o determine whether a conviction is for a crime punishable by a prison term exceeding one year [under North Carolina law], . . . we consider the maximum *aggravated* sentence that *could be imposed* for that crime upon a defendant with the worst possible criminal history."  *Harp*, 406 F.3d at 246 (second emphasis supplied); *see also Simmons*, 635 F.3d at 146.  Thus, the district court reasoned that although Appellant received a sentence of six to eight months for the 1996 Conviction, "his offense was punishable by imprisonment for more than a year" because it was a Class I felony, which carries a maximum sentence of 15 months.  J.A. 204.  Thus, "[a]ny challenge [to the 1996 Conviction] made by Petitioner's counsel would have failed."  *Id*.

Appellant filed a pro se motion to reconsider, again contending that the 1996 Conviction did not qualify as a felony drug offense.  And again, the district court denied the motion.  Appellant filed a notice of appeal on April 14, 2011, and a motion for COA with this court on August 3, 2011.

While the motion for COA was pending, this court, sitting en banc, overturned the panel decision in *Simmons*.  *See United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc) (hereinafter "*Simmons*").  We determined that "in deciding whether a sentencing enhancement was appropriate under the Controlled Substances Act, a district court could no longer look to a hypothetical defendant with the worst possible criminal history.  Instead, . . . a sentencing court may only consider the maximum possible sentence that the *particular* defendant could have received."  *United States v. Kerr*, 737 F.3d 33, 37 (4th Cir. 2013) (emphasis in original) (discussing *Simmons*, 649 F.3d at 246–

6

47 & n.9). Thus, what matters is the potential maximum sentence to which a defendant is exposed, not the highest possible sentence. *See Simmons*, 649 F.3d at 243 (relying on *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010)). As a result, we vacated Simmons's sentence because the state court "never made the recidivist finding necessary to expose Simmons to a higher sentence," *id.*, and the Government was "precluded from establishing that a conviction was for a qualifying offense" under the Controlled Substances Act, *id.* (quoting *United States v. Rodriquez*, 553 U.S. 377, 389 (2008)).

Nonetheless, we denied Appellant's motion for COA and dismissed his appeal of his first § 2255 petition because, at that time, *Simmons* did not apply retroactively on collateral review. *See United States v. Wheeler*, 487 F. App'x 103 (4th Cir. 2012) (per curiam) (citing *United States v. Powell*, 691 F.3d 554 (4th Cir. 2012)).

C.

*Second § 2255 Motion/*
*§ 2241 Petition*

In late 2011, Appellant filed a second § 2255 motion pro se, alleging that he was "actually innocent" of the § 851 enhancement based on *Simmons*, the 1996 Conviction is not a felony drug offense, and *Simmons* should apply retroactively. J.A. 248–49. Indeed, under *Simmons*, the maximum punishment to which Appellant was exposed for the 1996 Conviction was eight months, which would render that conviction nonqualifying as a felony drug offense under § 841(b)(1)(B).

In April of 2013, Appellant, now represented by counsel, filed a request for authorization to file the second § 2255 motion, along with an Alternative Petition, which

7

included a request for relief pursuant to 28 U.S.C. § 2241.[4]  *See* J.A. 295–309 (the

"§ 2241 Petition").  He sought review of the § 2241 Petition by way of the § 2255(e)

savings clause, contending, "[Section] 2255 has never provided an avenue for [Appellant]

to challenge his unlawful sentence.  [Section] 2255 relief is -- and always has been --

foreclosed for him on the [*Simmons*] issue presented in this Petition . . . ."  *Id*. at 302.

Although this court denied Appellant's request for authorization to file the second

§ 2255 motion, *see* Order, *In re Wheeler*, No. 13-220 (4th Cir. filed April 15, 2013), ECF

No. 5, we did not address the § 2241 Petition, which remained pending in district court.

Four months later, we held that *Simmons* applies retroactively on collateral review.  *See*

*Miller v. United States*, 735 F.3d 141 (4th Cir. 2013).

The district court then stayed Appellant's § 2241 Petition pending resolution of

our panel decision in *United States v. Surratt*, No. 14-6851.  On July 31, 2015, a divided

panel of this court held that a petitioner who received a sentence of life without parole

based on a prior conviction rendered nonqualifying after *Simmons* and *Miller* could not

pass through the savings clause and have his § 2241 petition heard on the merits.  *See*

*United States v. Surratt*, 797 F.3d 240, 269 (4th Cir. 2015), *reh'g en banc granted*, Dec.

2, 2015.  The majority in *Surratt* distinguished our decision in *In re Jones*, which granted

---

[4] Section 2241 provides, "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."  28 U.S.C. § 2241(a).  It also states, "The writ of habeas corpus shall not extend to a prisoner unless," inter alia, "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

savings clause relief after setting forth a three part test based on the legality of a prisoner's conviction, but not his sentence. *See* 226 F.3d 328, 333–34 (4th Cir. 2000).

Following that decision, the district court lifted the stay of Appellant's case, dismissed the § 2255 motion as second or successive without authorization, and denied the § 2241 Petition because it did not meet the requirements of the savings clause as set forth in *Surratt*. The court reasoned, "[Appellant] does not challenge the legality of his conviction. . . . Because [his] challenge is confined to the legality of his *sentence* the § 2241 petition will be denied." J.A. 363 (emphasis supplied).

After Appellant filed a notice of appeal, this court voted to rehear *Surratt* en banc, thereby vacating the panel decision, *see* 4th Cir. Local Rule 35(c) ("Granting of rehearing en banc vacates the previous panel judgment and opinion . . . ."), and held Appellant's appeal in abeyance pending that en banc decision. However, ultimately the en banc court concluded that Surratt's appeal was moot after President Obama commuted his sentence. *See United States v. Surratt*, 855 F.3d 218, 219 (4th Cir. 2017). Appellant's case was then removed from abeyance. We now address the district court's decision that Appellant did not meet the savings clause requirements de novo, unbound by this court's panel decision in *Surratt*. *See Fontanez v. O'Brien*, 807 F.3d 84, 86 (4th Cir. 2015); Local Rule 35(c).

## II.

In his § 2241 Petition, Appellant lodges a claim for relief from an alleged illegal sentence and explains he was entitled to have that claim heard by virtue of the savings

9

clause. Section 2255(e) provides a means for petitioners to apply for a traditional writ of habeas corpus pursuant to § 2241. It states:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.*

28 U.S.C. § 2255(e) (emphasis supplied).

Appellant raises two main arguments as to why he is entitled to a merits determination of the § 2241 Petition. First, he contends the savings clause is not jurisdictional and therefore, because the Government argued in the district court that Appellant satisfied the savings clause, it has waived any such challenge and precluded the courts from considering the issue. Second, Appellant argues that he can satisfy the requirements of the savings clause.

A.

*The Jurisdictional Argument*

On the jurisdictional argument, we first address the Government's shifting position in this case. In the district court, the Government took the position that Appellant met the savings clause requirements and was entitled to relief. *See, e.g.*, Gov't's Resp. to Pet'r's Mot. to Vacate, Correct, or Set Aside Sentence, *United States v. Wheeler*, No. 3:11-cv-603 (W.D.N.C. filed Nov. 29, 2013), ECF No. 14 at 1–2 ("[T]he Government agrees that [Appellant] is entitled to relief under the savings clause and § 2241 and recommends that this Court resentence him."). Indeed, the Government

10

argued that "when a defendant was sentenced to an enhanced mandatory-minimum sentence based on a conviction that qualified under pre-*Simmons* decisional law, and *Simmons* was decided after the time for direct review and an initial collateral attack," and when a prisoner demonstrates that a second or successive § 2255 motion is not available, "th[e] procedural requirement [of the savings clause] is met." *Id.* at 7–8. Further, it contended, "Imposing a mandatory-minimum sentence based on the defendant's prior conviction, when that conviction is legally ineligible to justify the mandatory term, is a fundamental error." *Id.* at 11. But now, on appeal, the Government has done an about-face, arguing that Appellant fails to satisfy the requirements of the savings clause.

1.

A party is not permitted to waive subject matter jurisdiction. *See Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (en banc). Therefore, our first task is to determine whether the requirements of the savings clause are jurisdictional. In *Rice v. Rivera*, we held that if a petitioner cannot satisfy the savings clause requirements, his or her § 2241 petition "must be dismissed for lack of jurisdiction." 617 F.3d 802, 807 (4th Cir. 2010) (per curiam). Appellant classifies this decision as a "drive-by jurisdictional ruling" with no precedential effect, and argues that the savings clause is not actually jurisdictional. *See* Appellant's Br. 2 (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503 (2006)). Therefore, he contends, the Government is able to waive the savings clause requirements.

Even assuming *Rice* lacks precedential effect, we hold that the savings clause is a jurisdictional provision. For years, the Supreme Court "endeavored . . . to bring some

11

discipline to the use of the term 'jurisdictional.'" *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (internal quotation marks omitted). It "pressed a stricter distinction between truly jurisdictional rules, which govern a court's adjudicatory authority, and nonjurisdictional claim-processing rules, which do not." *Id*. (internal quotation marks omitted). The Court ultimately set forth the following instruction, also known as the "clear statement" principle: "A rule is jurisdictional if the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional. But if Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional." *Id*. at 141–42 (alterations, citations, and internal quotation marks omitted).

This does not mean that Congress "must incant magic words," *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015) (internal quotation marks omitted), like, for example, the word "jurisdiction." Rather, "traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences." *Id*. "We consider context, including this Court's interpretations of similar provisions in many years past, as probative of" Congress' intent. *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153–54 (2013) (internal quotation marks omitted).

### 2.

We thus turn to the Supreme Court's interpretation of similar provisions. The Court has held that § 2253(c)(1) "is a jurisdictional prerequisite" because it "mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336

12

(2003) (quoting 28 U.S.C. § 2253(c)(1)). The Court explained that this provision "requires a threshold inquiry into whether the circuit court may entertain an appeal." *Id.* (internal quotation marks omitted). In contrast, the Court has held § 2253(c)(2) and § 2253(c)(3) to be nonjurisdictional. Subsection (c)(2) provides that a COA may issue upon "a substantial showing of the denial of a constitutional right" and subsection (c)(3) provides that the COA "shall indicate which specific issue or issues satisfy the showing required by [subsection (c)(2)]." Because those provisions "do[] not speak in jurisdictional terms or refer in any way to the jurisdiction of the appeals courts," but rather, "reflect[] a threshold *condition* for the *issuance* of a COA," *Thaler*, 565 U.S. at 143 (emphases supplied) (alterations and internal quotation marks omitted), they are not jurisdictional provisions. *See also Arbaugh*, 546 U.S. at 503, 516 (holding that Title VII's definition of "employer," which requires the defendant to have "fifteen or more employees," was actually "an element of a plaintiff's claim for relief, not a jurisdictional issue").

Similarly, in *Kwai Fun Wong*, the Supreme Court explained that "procedural rules, including time bars, cabin a court's power only if Congress has clearly stated as much." 135 S. Ct. at 1632 (alterations and internal quotation marks omitted). In that case, the Court decided that the statute of limitations set forth in the Federal Tort Claims Act ("FTCA") was not jurisdictional. Section 2401(b) of the FTCA states, "A tort claim against the United States *shall be forever barred unless* it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing" a notice of final agency denial. 28

13

U.S.C. § 2401(b) (emphasis supplied). Despite this emphatic language, the Court stated that statutes of limitations are "quintessential claim-processing rules" that normally "do not deprive a court of authority to hear a case . . . even when the time limit is important . . . and even when it is framed in mandatory terms, . . . however emphatically expressed those terms may be." *Kwai Fun Wong*, 135 S. Ct. at 1632 (alterations, citations, and internal quotation marks omitted). And while "a provision governing the time to appeal in a civil action qualifies as jurisdictional [if] Congress sets the time," a "time limit not prescribed by Congress ranks as a mandatory claim-processing rule." *Hamer v. Neighborhood Housing Services of Chicago*, 138 S. Ct. 13, 17 (2017).

Our sister circuits have split on the jurisdictional issue at hand. Appellant cites to *Harris v. Warden*, wherein the Seventh Circuit concluded, "Sections 2241 and 2255 deal with remedies; neither one is a jurisdictional clause. []Jurisdiction to resolve claims under § 2255, which technically are motions in the criminal prosecution, comes from 18 U.S.C. § 3231[.]" 425 F.3d 386, 388 (7th Cir. 2005). In contrast, the Eleventh Circuit has held that § 2255(e) "speaks in imperative terms regarding a district court's power to entertain a particular kind of claim" and is therefore jurisdictional in nature. *Williams v. Warden*, 713 F.3d 1332, 1340 (11th Cir. 2013). Many other circuits have sided with the Eleventh Circuit view, if by implication.[5]

---

[5] *See Abernathy v. Wandes*, 713 F.3d 538, 557 (10th Cir. 2013) ("[W]hen a federal petitioner fails to establish that he has satisfied § 2255(e)'s savings clause test -- thus, precluding him from proceeding under § 2241 -- the court lacks statutory jurisdiction to hear his habeas claims." (footnote omitted)); *Wooten v. Cauley*, 677 F.3d 303, 306 (6th Cir. 2012) (analyzing whether "[t]he use of the savings clause to establish jurisdiction" (Continued)

3.

We side with the Eleventh Circuit majority view for many reasons. First, "there is a clear expression of congressional intent." *Williams*, 713 F.3d at 1338. Section 2255(e) states that a § 2241 petition "shall not be entertained" if certain circumstances are present, "unless" another condition is present. 28 U.S.C. § 2255(e). Thus it "commands the district court not to entertain a § 2241 petition that raises a claim ordinarily cognizable in the petitioner's first § 2255 motion except in . . . exceptional circumstance[s]." *Williams*, 713 F.3d at 1338 (alterations and internal quotation marks omitted). Indeed, a "plain reading of the phrase 'shall not entertain'" demonstrates that "Congress intended to, and unambiguously did strip the district court of the power to act . . . unless the savings clause applies." *Id*. at 1339.

Second, the language at issue parallels language the Supreme Court has deemed jurisdictional. In *Miller-El*, the Court focused on the phrase "unless [a COA is issued] an appeal may not be taken." 537 U.S. at 336. It held that this phrase "mandates" that until a COA has been issued, the courts of appeals "lack jurisdiction to rule on the merits of

---

makes the proposed § 2241 petition subject to § 2255's statute of limitations); *Harrison v. Ollison*, 519 F.3d 952, 961 (9th Cir. 2008) ("Because Harrison has not established that his petition is a legitimate § 2241 petition brought pursuant to the escape hatch of § 2255, we do not have jurisdiction under § 2241 to hear his appeal."); *Hill v. Morrison*, 349 F.3d 1089, 1091 (8th Cir. 2003) (the savings clause "provides the court of incarceration as having subject matter jurisdiction over a collateral attack on a conviction or sentence"); *Cephas v. Nash*, 328 F.3d 98, 105 (2d Cir. 2003) ("[W]here . . . petitioner invokes § 2241 jurisdiction to raise claims that clearly could have been pursued earlier . . . then the savings clause of § 2255 is not triggered and dismissal of the § 2241 petition for lack of jurisdiction is warranted.").

[habeas] appeals." *Id.* Like this language, which strips a court of power to entertain an appeal unless a prerequisite is met, the savings clause language also strips the sentencing court of power to entertain a habeas corpus petition unless a prerequisite -- i.e., a determination that a § 2255 motion is inadequate or ineffective to test the legality of one's detention -- is met.

Third, the language is unlike the provisions the Supreme Court has labeled nonjurisdictional. In *Thaler*, the Court addressed the requirements for a COA: it may be issued upon "a substantial showing of the denial of a constitutional right," and must indicate "which specific issue or issues satisfy" that showing. 565 U.S. at 143 (quoting § 2253(c)(2), (c)(3)). These provisions do not address the appellate court's power to entertain an appeal, but rather, list the criteria a proper COA should possess. Thus, the language of § 2253(c)(2) and (c)(3) "does not . . . refer in any way to the jurisdiction of the appeals courts," as "[a] defective COA is not equivalent to the lack of any COA." *Id.*

The savings clause is different -- it does not concern criteria for a successful § 2241 petition; rather, it provides whether that petition may be entertained to begin with. Moreover, the provision at issue does not fit neatly with the other nonjurisdictional provisions. Unlike *Hamer*, this case involves a statute and not a rule; unlike *Kwai Fun Wong*, the savings clause does not provide a time limitation; and unlike *Arbaugh*, it is not an element of a claim for relief.

Finally, we find *Harris* to be unpersuasive. *Harris* reasoned that jurisdiction to resolve § 2255 claims derives from another statute, which gives district courts exclusive jurisdiction "of all offenses against the laws of the United States." 18 U.S.C. § 3231; *see*

16

*Harris*, 425 F.3d at 388. But the savings clause concerns jurisdiction to entertain a § 2241 habeas corpus petition, and, in any event, *Harris* was decided before *Thaler*, *Sebelius*, and *Kwai Fun Wong* and failed to examine the language of the savings clause in the context the Court directed in those cases. Further, the Seventh Circuit itself has sent mixed signals about the savings clause's jurisdictional quality. *Compare Harris*, 425 F.3d at 388, *with Garza v. Lappin*, 253 F.3d 918, 921 (7th Cir. 2001) ("If Garza can show that his petition fits under this narrow exception [in the savings clause], then . . . the district court had jurisdiction to consider his habeas petition . . . ."). Therefore, we decline Appellant's invitation to follow *Harris*.

Because the savings clause requirements are jurisdictional, we must reject Appellant's waiver argument. Though the Government's change of position is a "distasteful occurrence[]" and is "not to be encouraged, its about-face is irrelevant to our resolution of" this appeal. *Rice*, 617 F.3d at 806–07.

B.

*The Savings Clause Requirements*

We turn now to whether Appellant has satisfied the jurisdictional requirements of the savings clause -- that is, whether § 2255 is inadequate or ineffective to test the legality of Appellant's detention.

At the outset, it is well established that § 2255 "was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus [under § 2241]." *Davis v. United States*, 417 U.S. 333, 343 (1974). Indeed, "the sole purpose [of § 2255] was to minimize the difficulties encountered in habeas corpus hearings by affording the *same*

17

*rights* in another and more convenient forum." *Id*. at 344 (internal quotation marks omitted) (emphasis supplied).

We also acknowledge that Congress has bestowed "the courts broad remedial powers to secure the historic office of the writ." *Boumediene v. Bush*, 553 U.S. 723, 776 (2008). It is "uncontroversial . . . that the privilege of habeas corpus entitles the prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Id*. at 779 (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). Habeas corpus is "above all, an adaptable remedy," and its "precise application and scope change[] depending upon the circumstances." *Id*. We are thus entrusted with ensuring Appellant has a meaningful opportunity to demonstrate that he is entitled to relief from his allegedly erroneous sentence.

1.

*The* Jones *Test*

In our seminal decision *In re Jones*, we determined that Byron Jones satisfied the requirements of the savings clause. *See* 226 F.3d at 329–30. Jones was convicted of four counts of using a firearm during a drug offense pursuant to 18 U.S.C. § 924(c)(1), based on a search of his apartment that uncovered crack cocaine, as well as four firearms found in a locked closet. *See id*. at 330. However, after Jones filed his first § 2255 motion, the Supreme Court decided *Bailey v. United States*, 516 U.S. 137 (1995), which rendered Jones's convictions invalid. *See id*. at 330. Specifically, *Bailey* held that the Government must prove active employment of a firearm in order to convict a defendant for using a firearm under § 924(c)(1). *See id.* (citing *Bailey*, 516 U.S. at 143). Therefore, Jones's

18

conduct underlying his convictions was no longer illegal. *See id*. at 330, 334. Unable to

file a second or successive § 2255 motion because *Bailey* was a statutory (not a

constitutional) decision,[6] Jones attempted to file a § 2241 claim for relief by using the

savings clause portal. *See id.* at 329–30.

In analyzing Jones's claim, we set forth three elements that must be present for a

petitioner to satisfy the savings clause:

> [Section] 2255 is inadequate and ineffective to test the legality of a conviction when: (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

*Jones*, 226 F.3d at 333–34. *Jones* added, "[C]ourts [allowing § 2241 review of *Bailey*

claims] have focused on the more *fundamental defect* presented by a situation in which an

individual is incarcerated for conduct that is not criminal but, through no fault of his own,

has no source of redress." *Id*. at 333 n.3 (emphasis supplied). We then found that *Jones*

satisfied all three elements above and granted his request to file a § 2241 petition via the

savings clause.

---

[6] In order to file a second or successive § 2255 motion, a petitioner must demonstrate that his motion contains "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense"; or "a new rule of *constitutional law*, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h) (emphasis supplied).

## 2.

### *Whether* Jones *Applies to Sentencing*

Here, in denying Appellant's savings clause request and dismissing his § 2241 Petition, the district court explained,

> In the present case, Petitioner does not challenge the legality of his conviction. Instead, he moves the Court for an order vacating his sentence that was enhanced based on the finding that he had a predication [sic] North Carolina felony drug conviction. Because Petitioner's challenge is confined to the legality of his sentence the § 2241 petition will be denied.

J.A. 363 (citing *Jones*, 226 F.3d at 333–34). There is no doubt that *Jones* is still good law in this circuit, and the district court interpreted that decision narrowly. However, Appellant invites us to construe *Jones* more broadly to pertain to alleged sentencing errors.

The Government concedes that *Jones* may be read to encompass "certain serious sentencing errors," Gov't's Br. 55, and we agree. *Jones* did not address whether an erroneously imposed sentence is sufficient to invoke the savings clause or whether it could also be a "fundamental defect," as it had no occasion to do so. 226 F.3d at 333 n.3. However, *Jones* also does not preclude such a reading. To the contrary, *Jones* stated, "Section 2255 . . . was not intended to limit the rights of federal prisoners to collaterally attack their convictions *and sentences*," suggesting that the savings clause encompasses challenges to one's sentence. *Id*. at 332 (emphasis supplied).

Including sentencing errors within the ambit of the savings clause also finds support in the statutory language. The savings clause pertains to one's "detention," and

20

Congress deliberately did not use the word "conviction" or "offense," as it did elsewhere in § 2255. *See* 28 U.S.C. § 2255(h)(1) (referencing "the offense"); *id*. § 2255(f)(1) (referencing "conviction"). *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (alteration and internal quotation marks omitted)). Detention necessarily implies imprisonment. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment [is freedom] from government custody, *detention*, or other forms of physical restraint." (emphasis supplied)). Thus, "[t]he text of the [savings] clause . . . does not limit its scope to testing the legality of the underlying criminal conviction." *Brown v. Caraway*, 719 F.3d 583, 588 (7th Cir. 2013).

In addition, the Supreme Court has long recognized a right to traditional habeas corpus relief based on an illegally extended sentence. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004) ("[T]he 'core' of habeas corpus" has included challenges to "the duration of [the prisoner's] sentence."). Indeed, one purpose of traditional habeas relief was to remedy statutory, as well as constitutional, claims presenting "a fundamental defect which inherently results in a complete miscarriage of justice" and "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is present." *Davis*, 417 U.S. at 346 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). But if we held that a prisoner was foreclosed from seeking collateral relief from a fundamentally defective *sentence*, and "through no fault of his own, has no source of redress," this purpose would remain unfulfilled. *Jones*, 226 F.3d at 333 n.3. Therefore,

21

we readily conclude that § 2255(e) must provide an avenue for prisoners to test the legality of their sentences pursuant to § 2241, and *Jones* is applicable to fundamental sentencing errors, as well as undermined convictions.

3.

*The New Savings Clause Test for Erroneous Sentences*

Having decided that prisoners are able to challenge their allegedly illegal sentences in a § 2241 petition, and that § 2255(e) contemplates such a challenge, we must establish savings clause criteria tailored to that situation. To begin, *Jones* contemplates a change in "substantive law" that renders noncriminal the conduct by which a prisoner was convicted. Although *Bailey* was a Supreme Court case, *Jones* did not make savings clause relief dependent on a Supreme Court decision, nor does the savings clause dictate such a requirement. Indeed, the *Jones* test itself, at step one, contemplates that at the time of one's conviction, the "settled law of this circuit or the Supreme Court" established the legality of that conviction, and then, at step two, it signals a change in that substantive law. 226 F.3d at 333–34.

We see no need to read the savings clause as dependent only on a change in Supreme Court law. The majority in the vacated *Surratt* opinion surmised that only a Supreme Court decision can "open the door to successive relief" because § 2255(h), which pertains to second or successive § 2255 motions, requires "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." *Surratt*, 797 F.3d at 259 (quoting 28 U.S.C. § 2255(h)(2)). But this argument cuts the other way. Congress could have made savings clause relief dependent *only* on changes in

22

Supreme Court constitutional law by using the identical language in § 2255(e), but it did not. This is underscored by the fact that Congress anticipated the savings clause would apply to prisoners who had already been "denied . . . relief" by the sentencing court, sweeping in those prisoners filing a successive § 2255 motion. *Id.* § 2255(e). Therefore, to honor the tradition of habeas corpus and language and context of the provision, we conclude a change in this circuit's controlling law will suffice.

Next, that change in law must have been made retroactive on collateral review. Otherwise, the prisoner would not be able to "test the legality of his detention" in a § 2241 proceeding, which is the ultimate goal of the savings clause. 28 U.S.C. § 2255(e). And the retroactive change in law could not have occurred before direct appeal or the initial § 2255 petition. This is in harmony with *Jones* and honors the savings clause's requirement that the § 2255 motion be inadequate or ineffective. Third, the petitioner must otherwise be unable to meet the requirements of § 2255(h)(2) for second or successive § 2255 motions. This corresponds with *Jones*'s requirement that the petitioner be unable to satisfy the gatekeeping provisions of § 2255, *see* 226 F.3d at 334, and it also honors the savings clause's mandate that prisoners may only resort to the savings clause where the other avenues for remedy in § 2255 are ineffective. Finally, the sentencing error must be "sufficiently grave," *Hill v. Masters*, 836 F.3d 591, 595 (6th Cir. 2016), so as to be deemed a "fundamental defect," *Jones*, 226 F.3d at 333 n.3.[7]

_____

[7] The Third, Fifth, Sixth, and Seventh Circuits have also applied a fundamental defect or miscarriage of justice standard to determine whether prisoners satisfy the savings clause. *See Hill*, 836 F.3d at 595; *Brown*, 719 F.3d at 586–87; *Reyes-Requena v.* (Continued)

23

Taking all this into account, we conclude that § 2255 is inadequate and ineffective to test the legality of a sentence when: (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect. *See Jones*, 226 F.3d at 333–34 & n.3; *Hill*, 836 F.3d at 595; *Brown*, 719 F.3d at 586.

### 4.

### *Applying the New Savings Clause Test to Appellant's Case*

### a.

### *The First Three Requirements of the New Savings Clause Test*

First, it is undisputed that at the time Appellant was sentenced in February 2008, his sentence was legal pursuant to *Harp*. Second, the en banc *Simmons* decision, which abrogated *Harp*, was decided August 17, 2011, and was made retroactive on collateral review by *Miller* on August 21, 2013. This all occurred after Appellant's direct appeal, filed March 2008, and his first § 2255, filed June 2010. Although Appellant actually raised a *Simmons* type claim in his first § 2255 on ineffective assistance of counsel

---

*United States*, 243 F.3d 893, 904 (5th Cir. 2001); *In re Davenport*, 147 F.3d 605, 609–11 (7th Cir. 1998); *In re Dorsainvil*, 119 F.3d 245, 251 (3d Cir. 1997).

grounds, the *Simmons* en banc decision itself could not have been invoked at that time because it did not exist. *See Boumediene*, 553 U.S. at 779 ("[T]he privilege of habeas corpus entitles the prisoner to a *meaningful* opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law." (emphasis supplied) (internal quotation marks omitted)). In addition, Appellant is unable to satisfy the requirements of § 2255(h)(2) because *Simmons* was a statutory decision and was not made retroactive by the Supreme Court.

b.

*The Fourth Requirement of the New Savings Clause Test:*
*Fundamental Defect*

Finally, we address whether the increase in Appellant's mandatory minimum is an error sufficiently grave to be deemed a fundamental defect. When Appellant never should have been subject to an increase in the first place, the error is grave. Without the 1996 Conviction, Appellant's statutory minimum would have been five years -- half of the sentence to which he was subjected. An increase in the congressionally mandated sentencing floor implicates separation of powers principles and due process rights fundamental to our justice system.

i.

In the federal system, "defining crimes and fixing penalties are legislative, not judicial, functions." *United States v. Evans*, 333 U.S. 483, 486 (1948) (footnote omitted). Congress alone can set maximum and minimum terms of imprisonment, *see id.*, and those limits define legal boundaries for the punishment for a particular crime. *See Williams v.*

25

*New York*, 337 U.S. 241, 247 (1949) ("A sentencing judge" determines the "type and extent of punishment" within "fixed statutory or constitutional limits"); *Hunter v. Fogg*, 616 F.2d 55, 61 (2d Cir. 1980) ("If in fact the legislature has circumscribed the judge's discretion by specifying a mandatory minimum sentence, fundamental fairness requires that the defendant be so informed."). Therefore, consistent with the "constitutional principle of separation of powers," a defendant has a "constitutional right to be deprived of liberty as punishment for criminal conduct only to the extent authorized by Congress," and a violation of that principle can "trench[] particularly harshly on individual liberty." *Whalen v. United States*, 445 U.S. 684, 689–690 (1980).

In *Hicks v. Oklahoma*, 447 U.S. 343 (1980), an Oklahoma sentencing jury -- pursuant to instructions based on a then-effective habitual offender statute -- imposed a mandatory 40 year sentence upon the defendant, Flynn Hicks. *See id*. at 344–45. After Hicks's sentence was handed down, the habitual offender statute was declared unconstitutional in another case. *See id*. at 345. Had the jury been correctly instructed, they could have imposed a sentence of ten years or more in Hicks's case. *See id*. at 346. Hicks then sought to have his sentence set aside on appeal, but the state appellate court denied his request, explaining that Hicks was not prejudiced "since his sentence was within the range of punishment that could have been imposed in any event." *Id*. at 345. The Supreme Court, however, found a due process violation because Hicks had a "substantial and legitimate expectation that he w[ould] be deprived of his liberty only to the extent determined by the [sentencing body] in the exercise of its statutory discretion." *Id*. at 346. Too here, without the 1996 Conviction, the district court's statutory discretion

26

would have been expanded by a much lower mandatory minimum -- one that, in fact, fell below the applicable Guidelines range of 70–87 months.

Similarly, in *United States v. Tucker*, the Supreme Court considered whether a sentence of 25 years of imprisonment for armed bank robbery (the maximum term authorized by statute), which was clearly based on two prior convictions that were later deemed constitutionally invalid, should be vacated. 404 U.S. 443, 444–45 (1972). The Ninth Circuit had vacated the sentence and remanded for resentencing because "there was a reasonable probability that the defective prior convictions may have led the trial court to impose a heavier prison sentence than it otherwise would have imposed." *Id*. at 445–46 (internal quotation marks omitted). The Supreme Court affirmed, explaining, "[W]e deal here, not with a sentence imposed in the informed discretion of a trial judge, but with a sentence founded at least in part upon misinformation of constitutional magnitude." *Id*. at 447. It continued, "[T]his prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue." *Id.* (quoting *Townsend v. Burke*, 334 U.S. 736 (1948)). Likewise, here, the district court assumed the 1996 Conviction is sufficient to double Appellant's statutory minimum. But it is decidedly not.

In light of these decisions, it is not surprising that the Supreme Court later recognized, "It is impossible to dissociate the floor of a sentencing range from the penalty

27

affixed to the crime." *Alleyne v. United States*, 133 S. Ct. 2151, 2160 (2013);[8] *see*

*Almendarez–Torres v. United States*, 523 U.S. 224, 245 (1998) (recognizing that

mandatory minimums can lead to "a *minimum* sentence of imprisonment more than twice

as severe as the *maximum* the trial judge would otherwise have imposed" (emphases in

original) (internal quotation marks omitted)).   This court has also recognized the

fundamental problem with an incorrectly designated statutory sentencing benchmark.

We have suggested that an "erroneously-imposed sentencing floor is problematic" when

it comes to habeas cognizability under § 2255(a), which requires a fundamental defect

resulting in a miscarriage of justice.  *United States v. Newbold*, 791 F.3d 455, 460 n.6

(4th Cir. 2015) (holding that an erroneous sentence above the statutory maximum is

cognizable on initial § 2255 review).   Specifically, an erroneous mandatory minimum

"create[s] the mistaken impression that the district court had no discretion to vary

downward from the low end of [the defendant's] range." *Id*.  And in this case, the district

court noted that the mandatory minimum was "harsh," but its "hands [we]re tied" because

it was confined by the 120 month sentencing floor.  J.A. 85.  We similarly find no merit

in the notion that Appellant could have been assigned the same sentence even with the

correct mandatory minimum, as the Supreme Court has roundly rejected that argument in

---

[8] *Alleyne* bars "judicial factfinding that increases the mandatory minimum sentence for a crime," 133 S. Ct. at 2155, but the Court left undisturbed the "narrow exception to this general rule for the fact of a prior conviction," *id*. at 2160 n.1; *see Almendarez-Torres*, 523 U.S. 224, 226 (1998) (A "penalty provision" that "authorizes a court to increase the sentence for a recidivist" based on a prior conviction "does not define a separate crime.").   Nonetheless, the Court's recognition of the relationship between the floor of the sentence and penalty afforded cannot be ignored.

*Hicks*, explaining, "[s]uch an arbitrary disregard of the petitioner's right to liberty is a denial of due process of law." *Hicks*, 447 U.S. at 346.[9]

ii.

We are also unpersuaded by the Government's implication that any sentence that falls at or below the statutory maximum does not present a fundamental defect. Indeed, two of our sister circuits have found a fundamental defect sufficient to satisfy the savings clause where the prisoner's erroneous sentence fell beneath the statutory maximum.

In *Brown v. Caraway*, the Seventh Circuit held that "a petitioner may utilize the savings clause to challenge the misapplication of the career offender Guideline, at least where, as here, the defendant was sentenced in the pre-*Booker* era,"[10] where the sentence was nonetheless below the statutory maximum. 719 F.3d at 588 (footnote omitted).

---

[9] The Government cites to our decision in *United States v. Foote*, 784 F.3d 931 (4th Cir. 2015), for the proposition that this court may be reluctant to find a fundamental defect where "even if we vacate and remand, the same sentence could be legally imposed." Gov't's Br. 58 (quoting *Foote*, 784 F.3d at 941 (alteration omitted)). But *Foote* is inapposite. In *Foote*, we held that only errors presenting "a fundamental defect which inherently results in a complete miscarriage of justice" are cognizable on § 2255 collateral review, and a Guidelines career offender designation later nullified by *Simmons* was not one of those errors. *Id.* at 932 (internal quotation marks omitted). This was because "Appellant was (and on remand, would again be) sentenced under an *advisory* Guidelines scheme requiring individualized analysis of the sentencing factors set forth in 18 U.S.C. § 3553(a)." *Id.* at 941 (emphasis in original). The fact that the Guidelines were advisory, and did not carry the weight and effect of a statute, was central to our decision. *See id.* at 942 (noting that the Guidelines are "stripped . . . of legal force" (internal quotation marks omitted)). In contrast, here, we have an increase to the floor of the permissible statutory sentence, which invokes fundamental constitutional principles, not a change in an advisory range.

[10] *See United States v. Booker*, 543 U.S. 220 (2005) (holding that the Guidelines are not mandatory provisions).

29

Brown challenged his 360 month sentence on the grounds that one of his predicate convictions was not a crime of violence under *Begay v. United States*, 553 U.S. 137 (2008), and thus, he was not a career offender. *See id.* at 586. The career offender designation changed his mandatory Guidelines range from 262–327 months to 360 months to life, but his sentence of 360 months was still under the statutory maximum of life imprisonment. *See id.* at 585–86. The court nonetheless held that this increase amounted to a miscarriage of justice and a fundamental sentencing defect because the "period of incarceration exceeded that permitted by law." *Id.* at 587 (alteration and internal quotation marks omitted).

Although the sentence was imposed at a time when the Guidelines were mandatory, critically, the Seventh Circuit relied on its prior decision in *Narvaez v. United States*, which held that the petitioner, erroneously classified as a career offender but sentenced under the statutory maximum, experienced a fundamental sentencing defect and miscarriage of justice. 674 F.3d 621, 629 (7th Cir. 2011). *Narvaez* reasoned, "The fact that Mr. Narvaez's sentence falls below the applicable statutory-maximum sentence is not alone determinative of whether a miscarriage of justice has occurred." *Id.* It explained, "to increase, dramatically, the point of departure for his sentence is certainly as serious as the most grievous misinformation that has been the basis for granting habeas relief." *Id.* (citing *Tucker*, 404 U.S. at 447). Thus the *Brown* court, in relying on *Narvaez*, made clear that although Brown's resulting sentence was higher than the high end of the mandatory Guidelines range, this was not the only reason the defect was

30

fundamental for purposes of § 2255(e). In the Seventh Circuit's view, an increase in one's sentencing benchmark is equally grave.

In *Hill v. Masters*, the Sixth Circuit too addressed a savings clause request from a pre-*Booker*, erroneously imposed career offender enhancement which increased the prisoner's mandatory Guidelines sentencing range from 235–293 months to 292–365 months. *See* 836 F.3d at 593. But Hill's statutory maximum sentence was life imprisonment, so his resulting sentence of 300 months was still within the statutory range. *See id.* at 596. *Hill* explained that "[s]erving a sentence imposed under mandatory guidelines (subsequently lowered by retroactive Supreme Court precedent) shares similarities with serving a sentence imposed above the statutory maximum. Both sentences are beyond what is called for by law [and] raise a fundamental fairness issue." *Id.* at 599. In so holding, *Hill* relied on *Brown* and Chief Judge Gregory's dissenting opinion in this court's *Surratt* panel decision, which reasoned that although Surratt's life sentence did not exceed the statutory maximum, it was nonetheless a fundamental defect. *See id.* (citing *Surratt*, 797 F.3d at 270 (Gregory, J., dissenting)). As part of the fundamental defect analysis, *Hill* explained that had the career offender enhancement "been properly considered under now-applicable Supreme Court precedent, Hill would not have been treated as a career offender, and the sentencing court would have been required to impose a sentence within a lesser range." *Id.* Thus, like the Seventh Circuit, the Sixth Circuit also recognizes the fundamental significance of a proper sentencing range. We agree with our sister circuits' view -- and the view of Chief Judge Gregory's

dissent in *Surratt* -- that a sentencing error need not result in a sentence that exceeds statutory limits in order to be a fundamental defect.[11]

For all of these reasons, we hold that Appellant also meets the third requirement of the savings clause -- that his sentence now presents an error sufficiently grave to be deemed a fundamental defect.

5.

*The Government's Position in this Case*

Finally, we address the Government's reliance on the Eleventh Circuit's recent decision in *McCarthan v. Director of Goodwill Industries-Suncoast, Inc.*, 851 F.3d 1076 (11th Cir. 2017) (en banc). In *McCarthan*, a divided en banc court concluded that a petitioner could not proceed through the savings clause portal where controlling circuit precedent, overturned by a Supreme Court case, changed in such a way that one of the petitioner's prior convictions no longer qualified him for a sentencing enhancement under the Armed Career Criminal Act. *See id*. at 1080. The Eleventh Circuit rejected its longstanding five part test similar to the one we established in *Jones*, and instead analyzed each term of the text of the savings clause. *See id*. at 1085–90. Ultimately, the court set a high bar for "test[ing] the legality" of one's conviction, explaining that McCarthan could have "presented his claim and won relief in the Supreme Court" but

---

[11] We make no decision regarding whether an erroneous sentence above the statutory maximum is a fundamental defect for purposes of the savings clause, as those facts are not presented to us today.

32

chose not to do so. *Id.* at 1087. It also reasoned that "[a]dverse circuit precedent" does not make the filing of a first § 2255 motion "inadequate or ineffective." *Id.*

The Government's reliance on *McCarthan* is inapt because the *McCarthan* court explicitly rejected a test similar to the *Jones* test, which the circuit had used for years. Only then could it proceed to analyze the full text of the savings clause anew, unrestrained by such a test. Here, however, *Jones* remains good law, a point the Government concedes in its brief -- despite spending over 20 pages arguing why it was wrongly decided. And notably, though the Government claims it changed positions in this case because of the *McCarthan* decision, which "offer[s] a far more extensive textual analysis than any prior circuit decision," Gov't's Br. 30, it fails to acknowledge that the 2011 Tenth Circuit opinion in *Prost v. Anderson*, written by then-Judge Gorsuch, provides a textual analysis just as thorough, if not more so. *See* 636 F.3d 578 (10th Cir. 2011). It is curious then that the Government chose now -- literally in the middle of Appellant's case -- to completely change course. It appears the timing of *McCarthan* was nothing more than a convenient escape hatch.[12]

---

[12] The Government's about-face is particularly distasteful in this case wherein the Government cannot identify any principled reason for its turnabout. It was not until oral argument that the Assistant to the Solicitor General attributed this change of position to "new leadership in the [Justice] Department." Oral Arg. at 12:47–50, *United States v. Wheeler*, No. 16-6073 (4th Cir. Jan. 25, 2018), http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments.

6.

*Conclusion*

In sum, we hold that § 2255 is an inadequate and ineffective means to test the legality of Appellant's detention, which is based on a sentence issued with an erroneously increased mandatory minimum. Therefore, the district court erred in dismissing Appellant's § 2241 Petition. Appellant may pass through the savings clause portal and have the § 2241 petition addressed on the merits.[13]

III.

For the foregoing reasons, we vacate and remand.

*VACATED AND REMANDED*

---

[13] According to the Bureau of Prisons Inmate Locator, Appellant is currently detained at Bennettsville FCI in Bennettsville, South Carolina. The district court should first decide whether it can hear the § 2241 Petition on the merits, or whether it should transfer to the district of confinement, the District of South Carolina. *See United States v. Poole*, 531 F.3d 263, 270 (4th Cir. 2008) ("When § 2255 'appears . . . inadequate or ineffective to test the legality of his detention,' . . . a federal prisoner may seek habeas relief from the court *in the district of his confinement* under § 2241." (quoting 28 U.S.C. § 2255(e)) (emphasis supplied)).