**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-6347

LEE BENTLEY FARKAS,

Petitioner – Appellant,

v.

WARDEN, FCI BUTNER II,

Respondent – Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, Chief District Judge. (5:18-hc-02046-BO)

Submitted: May 22, 2020                           Decided: August 26, 2020

Before AGEE, KEENAN, and RICHARDSON, Circuit Judges.

Affirmed by published opinion. Judge Richardson wrote the opinion, in which Judge Agee and Judge Keenan joined.

Elliot S. Abrams, CHESHIRE PARKER SCHNEIDER, PLLC, Raleigh, North Carolina; Samuel B. Hartzell, WOMBLE BOND DICKINSON (US) LLP, Raleigh, North Carolina, for Appellant. Robert J. Higdon, Jr., United States Attorney, Joshua B. Royster, Assistant United States Attorney, John E. Harris, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

RICHARDSON, Circuit Judge:

Congress requires every federal prisoner who collaterally attacks his conviction to employ the motion mechanism provided in 28 U.S.C. § 2255. There is one exception: If § 2255 appears "inadequate or ineffective," then § 2255(e) provides that a federal prisoner may apply for a writ of habeas corpus under § 2241. In this appeal, we consider whether the petitioner's claims trigger this so-called "savings clause" exception.

In 2010, federal agents arrested Lee Bentley Farkas for fraud. On the government's motion, the district court froze Farkas's assets—at first preventing him from retaining his counsel of choice. Eventually, the court released enough resources for Farkas to hire a team of lawyers and pay his court-appointed attorney. Farkas was convicted, and he lost his direct appeal. In 2014, he filed a § 2255 motion for habeas relief, which the district court denied and Farkas asked us to dismiss on appeal.

Two years later, the Supreme Court determined that the pretrial restraint of a defendant's "untainted" assets, if needed to retain counsel, violates the Sixth Amendment. *Luis v. United States*, 136 S. Ct. 1083, 1087 (2016) (plurality). After *Luis*, we reconsidered our Circuit precedent that permitted the pretrial restraint of a defendant's "substitute" assets without directly connecting those assets to the alleged wrongdoing. *See In re Billman*, 915 F.2d 916, 917 (4th Cir. 1990), *overruled by United States v. Chamberlain*, 868 F.3d 290, 295 (4th Cir. 2017) (en banc). And in *Chamberlain*, we held that the criminal forfeiture statute permits freezing only those assets traceable to the charged offense. 868 F.3d at 297 (construing 21 U.S.C. § 853(e)). Based on this change in statutory interpretation, Farkas filed the instant § 2241 habeas application. The application attacks Farkas's conviction,

2

asserting that he is entitled to habeas relief based on *Chamberlain* and the Sixth Amendment.

We disagree. Farkas fails to show that § 2255 would be "inadequate or ineffective to test the legality of his detention"—a jurisdictional prerequisite to his § 2241 application. First, as our existing "savings clause" jurisprudence makes abundantly clear, a § 2255 motion is fully adequate to address alleged Sixth Amendment violations. Second, his statutory claim still fails our "savings clause" tests. For these reasons, the district court properly dismissed Farkas's § 2241 application for lack of jurisdiction.

## I. Background

### A. Farkas's fraud convictions

Between 2002 and 2009, Farkas and his co-conspirators engaged in a multi-stage fraud scheme centered on a mortgage company in Ocala, Florida. Farkas served as the chairman and principal owner of that company. In brief, Farkas's company papered over a $100-million funding deficit, sold over $500 million in sham mortgage loans, inflated the value of collateral to the tune of some $1.5 billion, and sought to defraud the federal government's 2008-financial-crisis-era Troubled Asset Relief Program of $553 million. *See generally United States v. Farkas*, 474 F. App'x 349, 351–52 (4th Cir. 2012).

In June 2010, a federal grand jury indicted Farkas on several fraud charges. The next day, the district court entered a restraining order freezing Farkas's assets under 21 U.S.C. § 853(e)(1)(A). At his arraignment, Farkas appeared with two attorneys, Gerald Houlihan and Jeffrey Harris. The district court allowed the lawyers to enter a limited appearance, where they explained that, "but for the restraining order, [they] . . . would have

3

been on board" with Farkas's defense. J.A. 9 (internal quotations omitted). Farkas was unable to pay for their representation, and the district court appointed an attorney for Farkas in August 2010. *See* 18 U.S.C. § 3006(A). In September 2010, the district court granted a consent motion to release one of Farkas's real properties—allowing him to hire a three-lawyer team from out of state and pay his court-appointed attorney.[1]

Seven months later, Farkas's trial began. And in 2011, the jury convicted Farkas of six counts of bank fraud, 18 U.S.C. § 1344; four counts of wire fraud, § 1343; three counts of securities fraud, § 1348; and conspiracy to commit bank fraud, wire fraud, and securities fraud, § 1349. The district court sentenced Farkas to thirty years' imprisonment followed by three years' supervised release. The court also ordered Farkas to forfeit $38,541,209 and held him liable for over $3.5 billion in restitution. We affirmed on direct appeal, rejecting Farkas's argument that the district court violated his Sixth Amendment right to counsel (among other claims). *See Farkas*, 474 F. App'x at 355–56 ("It is clear on the record before us that Farkas was not denied a fair opportunity to secure counsel.").

Farkas then made his first attempt at habeas relief, filing a § 2255 motion that asserted claims of (1) ineffective assistance of trial counsel, (2) ineffective assistance of appellate counsel, and (3) discovery violations implicating *Brady v. Maryland*, 373 U.S. 83 (1963). *See United States v. Farkas*, Nos. 1:10cr00200 LMB, 1:13cv01191 LMB, 2014

---

[1] And an insurance carrier later advanced a million dollars toward Farkas's defense costs. Through trial, Farkas appears to have spent more than two million dollars on the lawyers he chose to hire. *See Farkas v. Nat'l Union Fire Ins., Co. of Pittsburgh, Pa*, 2011 WL 2838167, at *2 (E.D. Va. July 14, 2011).

4

WL 3615851, at *3 (E.D. Va. July 18, 2014). The district court denied the motion, and we denied a certificate of appealability. *United States v. Farkas*, 592 F. App'x 211, 212 (4th Cir. 2015).

### B.    The Sixth Amendment and the changing law of criminal forfeiture

Five years after his conviction, the Supreme Court decided *Luis v. United States*, which presented the question of "whether the pretrial restraint of a criminal defendant's legitimate, untainted assets . . . needed to retain counsel of choice violates the Fifth and Sixth Amendments."  136 S. Ct. 1083, 1088 (2016) (plurality) (internal quotations and alterations omitted).  The Sixth Amendment guarantees, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."  U.S. CONST. amend. VI.  In *Luis*, four Justices, highlighting the "fundamental character" of the Sixth Amendment, 136 S. Ct. at 1088–89, found a constitutional right for a defendant "to use her own 'innocent' property to pay a reasonable fee for the assistance of counsel," *id.* at 1096.  Justice Thomas reached the same result, analyzing the "Sixth Amendment's text and common-law backdrop" in a separate opinion.  *Id.* (Thomas, J., concurring in the judgement); *see id.* at 1102–03 ("When the potential of a conviction is the only basis for interfering with a defendant's assets before trial, the [Sixth Amendment] requires the Government to respect the longstanding common-law protection for a defendant's untainted property.").[2]

---

[2] After *Luis*, Farkas launched a second collateral attack on his conviction in the form of a § 2241 habeas application.  There (as here), he asserted that the pretrial restraint of his assets violated the Sixth Amendment right to counsel.  The district court dismissed the (Continued)

5

The Supreme Court's decision in *Luis* cast doubt on the law of our Circuit, which had permitted the government to freeze, through a pretrial restraining order, a defendant's "substitute" assets in an amount equivalent to that involved in the alleged wrongdoing. *See In re Billman*, 915 F.2d at 917. So in *Chamberlain*, 868 F.3d at 291, the en banc court reconsidered our interpretation of 21 U.S.C. § 853(e)—the statute under which the government justified freezing Farkas's assets. And our full court unanimously held, on statutory grounds, that this criminal forfeiture statute does not permit the pretrial restraint of untainted substitute property. *Chamberlain*, 868 F.3d at 297.

## C.    The proceedings below

After our decision in *Chamberlain*, Farkas initiated his third collateral attack on his conviction, filing the habeas application that would lead to this appeal. Farkas did not seek this court's authorization to file a successive § 2255 motion. Instead, Farkas claims that the § 2255 remedy-by-motion is "inadequate or ineffective" to test the legality of his detention and filed the instant application under § 2241. Farkas "bases this [application] on . . . *Chamberlain* and on the violation of his Sixth Amendment right to counsel of choice." J.A. 5.

The district court dismissed Farkas's § 2241 application for lack of jurisdiction. First, the district court reasoned that "because Farkas's petition challenges the

petition for lack of jurisdiction, holding that § 2255 was not inadequate or ineffective to test the legality of his detention. *See Farkas v. Andrews*, No. 5:17-HC-2070-D, 2017 WL 4518684, at *3 (E.D.N.C. Oct. 10, 2017). Although Farkas sought review of the district court's ruling, he later moved to dismiss his appeal. We allowed the voluntary dismissal. *Farkas v. Andrews*, No. 17-7409, 2017 WL 8942442 (4th Cir. Dec. 27, 2017).

constitutionality of the post-indictment restraining order and purported deprivation of his Sixth Amendment right to counsel . . . Farkas generally must seek relief under section 2255." J.A. 107. Next, the district court considered whether a § 2255 motion would be "inadequate or ineffective" to address Farkas's statutory argument by applying the "savings clause tests" that our Circuit set out in *In re Jones*, 226 F.3d 328, 333–34 (4th Cir. 2000) and *United States v. Wheeler*, 886 F.3d 415, 426-29 (4th Cir. 2018). Finding neither *Jones* nor *Wheeler* satisfied, the district court dismissed the petition for lack of subject matter jurisdiction. *See Wheeler*, 886 F.3d at 426 ("the savings clause requirements are jurisdictional").[3] Farkas timely appealed, arguing, as he did below, that § 2255 is inadequate and ineffective to test the legality of his detention, making his § 2241 application proper.

## II.    Discussion

Farkas bears the burden of establishing the inadequacy of § 2255 so that he may proceed with his § 2241 habeas application. *See, e.g.*, *Charles v. Chandler*, 180 F.3d 753, 756 (6th Cir. 1999). We review this question of law de novo. *Lester v. Flournoy*, 909 F.3d 708, 710 (4th Cir. 2018).

---

[3] Not all of our sister circuits agree on the jurisdictional nature of the "savings clause." *Compare Williams v. Warden, Fed. Bureau of Prisons*, 713 F.3d 1332, 1340 (11th Cir. 2013) (the "savings clause" is jurisdictional), *with Harris v. Warden*, 425 F.3d 386, 388 (7th Cir. 2005) (the "savings clause" is not jurisdictional).

## A. The writ of habeas corpus

Habeas corpus, "a writ antecedent to statute, . . . throw[s] its root deep into the genius of our common law." *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (internal quotations omitted). As "the most celebrated writ in the English law," 3 William Blackstone, *Commentaries on the Laws of England* 129 (1st ed. 1768), *habeas corpus ad subicidendum* secured the "natural inherent right" of personal liberty, "which could not be surrendered or forfeited" save for the commission of a crime, *id.* at 133; *see* Magna Carta art. 39 (1215). English law required (as ours does today) the government to justify "the causes[] and the extent" of a prisoner's detention, and so the "Great Writ" permitted a court to examine the grounds for his confinement. 3 Blackstone, *Commentaries* 133. By the time of our independence, the writ had become "an integral part of our common law heritage," *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973), and would come to "receive[] explicit recognition in the Constitution, which forbids suspension of '[t]he Privilege of the Writ of Habeas Corpus . . . unless when in Cases of Rebellion or Invasion the public Safety may require it,'" *Rasul*, 542 U.S. at 474 (quoting U.S. CONST. art. I, § 9, cl. 2). *See also Boumediene v. Bush*, 553 U.S. 723, 739 (2008) ("The Framers viewed freedom from unlawful restraint as a fundamental precept of liberty, and they understood the writ of habeas corpus as a vital instrument to secure that freedom.").

Although the Great Writ existed before statute, its contours have been molded by the legislature over time, first in England and later in the United States. At times, lawmakers curtailed abuses of the writ: "[T]o avoid vexatious delays by the removal of frivolous causes," for instance, Parliament limited the issuance of the writ during

8

proceedings overseen by experienced judges. 3 Blackstone, *Commentaries* 130 (citing 21 Jac. I. (Jas. 1) c. 23 (1623) (inferior courts law)); *compare Banister v. Davis*, 140 S.Ct 1698, 1707 (2020) (Modern habeas law "prevent[s] serial challenges to a judgment of conviction, in the interest of reducing delay, conserving judicial resources, and promoting finality."). At other times, legislation expanded the writ in response to abuses by the crown and courts: After the Star Chamber, the Habeas Corpus Act of 1640 strengthened the writ and enumerated the grounds for its issuance. *See* 16 Car. 1 c. 10. Parliament would again reinforce the writ in the famed Habeas Corpus Act of 1679. 31 Cha. 2 c. 2; *see generally* 3 Blackstone, *Commentaries* 134–37 (describing the second of these acts as "another *magna carta* of the kingdom").

The first Congress continued the legislative tradition of sculpting the writ when it passed the Judiciary Act of 1789. That statute granted the "justices of the supreme court, as well as justices of the district courts, . . . power to grant writs of habeas corpus" for prisoners "in custody, under or by colour of the authority of the United States." 1 Stat. 73 § 14. And over the next two centuries, Congress would continue "innovat[ing] in the field of habeas corpus." *Boumediene*, 553 U.S. at 795. So in 1800, Congress extended the writ to state detainees for the first time—permitting the writs' issue to those imprisoned for debts already discharged in federal bankruptcy proceedings. *See* Bankruptcy Act of 1800, 2 Stat. 19 § 38.

After the Civil War, Congress made the writ available in "*all cases* where *any person* may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States." Act of Feb. 5, 1867, 14 Stat. 385 (emphasis added).

9

And in 1948, Congress codified the general grant of habeas jurisdiction to the federal courts at 28 U.S.C. § 2241, established a motion vehicle for federal prisoners to attack their convictions in § 2255, and provided for a new system to challenge state convictions in § 2254. *See generally*, Richard Fallon, et al., *Hart and Weschler's the Federal Courts and the Federal System* 1197 (7th ed. 2015) (discussing the Habeas Corpus Act of 1948, 62 Stat. 967).

Recognizing this history, the Supreme Court has affirmed that "judgments about the proper scope of the writ are 'normally for Congress to make.'" *Felker v. Turpin*, 518 U.S. 651, 664 (1996) (quoting *Lonchar v. Thomas*, 517 U.S. 314, 323 (1996)). But although "the power to award the writ by any of the courts of the United States must be given by written law," *Ex parte Bollman*, 8 U.S. 75, 94 (1807), the Constitution requires Congress to affirmatively provide for the writ (or a writ substitute), unless it follows the requirements of the Suspension Clause, *see Boumediene*, 553 U.S. at 771.

**B.     The Antiterrorism and Effective Death Penalty Act of 1996**

Congress' latest pronouncement on the writ of habeas corpus comes to us in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. *See Felker*, 518 U.S. at 664 (explaining that AEDPA is "well within the compass of this evolutionary process"). For this appeal, we note three core properties of AEDPA.

First, all convicted federal prisoners must generally use the remedy-by-motion mechanism provided in § 2255 to challenge their convictions or sentences. *In re Vial*, 115 F.3d 1192, 1194 (4th Cir. 1997) (en banc); *Lester*, 909 F.3d at 710. In § 2255, Congress

10

guarantees "every federal prisoner the opportunity to launch at least one collateral attack" on his detention. *Prost v. Anderson*, 636 F.3d 578, 583 (10th Cir. 2011) (Gorsuch, J.); *cf. Banister v. Davis*, 140 S. Ct. 1698, 1704 (2020) (describing a "state prisoner['s] . . . one [guaranteed] chance to bring a federal habeas challenge" under § 2254). But not more than one. If a prisoner has attacked his conviction or sentence by filing a § 2255 motion (as Farkas has), "he may not file another except under very limited circumstances." *Lester*, 909 F.3d at 710.

Second, § 2255(h) delineates those "limited circumstances," *Lester*, 909 F.3d at 710, providing "two narrow paths" that may allow a successive § 2255 motion. *See In re Stevens*, 956 F.3d 229, 232 (4th Cir. 2020) (discussing the § 2244(b) successive petition requirements referenced by § 2255(h)). Before filing a successive motion in the district court, § 2255(h) requires a federal prisoner to make a prima facie showing in the Court of Appeals that (1) "'newly discovered evidence' prov[es] he was not guilty of his offense" or (2) a "previously unavailable rule of constitutional law made retroactive on collateral review by the Supreme Court entitles him to relief." *Lester*, 909 F.3d at 710–11 (discussing § 2255(h)(1)–(2)); *see also In re Vial*, 115 F.3d at 1194–95. We will authorize a petitioner to file his successive § 2255 motion in the district court only if one of these gatekeeping requirements is satisfied.

Third, Congress provides one exception to the general rule that convicted federal prisoners must proceed under § 2255. Section 2255(e)'s so-called "savings clause" permits a prisoner to sidestep § 2255 and instead file a traditional § 2241 habeas application if it "appears that the [§ 2255] remedy by motion is inadequate or ineffective to test the legality

11

of his detention." § 2255(e); *Rice v. Rivera*, 617 F.3d 802, 807 (4th Cir. 2010) ("It is only when '§ 2255 proves inadequate or ineffective to test the legality of detention,' that a federal prisoner may pursue habeas relief under § 2241."). Section 2241 applications, unlike those filed under § 2254 or § 2255, are not subject to successive petition requirements. *Lester*, 909 F.3d at 711 & n.2. *But see McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1090–91 (11th Cir. 2017) (en banc).

Farkas claims that this "savings clause" permits his § 2241 application (and so his claims circumvent the gatekeeping requirements that otherwise bar a § 2255 motion). But the government insists that § 2255 is adequate to test Farkas's detention (even if that test would not succeed), so the "savings clause" cannot apply.

### C.  The Fourth Circuit's "savings clause" jurisprudence

This appeal turns on the scope of § 2255(e)'s "savings clause." It provides:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained . . . *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention*.

§ 2255(e) (emphasis added).

To begin, two features of this clause must be noted. First, the text "juxtapose[s] the terms 'inadequate or ineffective' with the phrase 'to test the legality of [a prisoner's] detention.'" *Prost*, 636 F.3d at 584. From this, we think it beyond question that "§ 2255 is not rendered inadequate or ineffective merely because an individual has been unable to obtain relief under that provision, . . . or because an individual is procedurally barred from

filing a § 2255 motion." *In re Vial*, 115 F.3d at 1194 n.5 (internal citations omitted); *Lester*, 909 F.3d at 716.  In other words, a test is not "inadequate" just because someone fails it.

Second, the "savings clause" is structured as an exception to AEDPA's comprehensive limitations on the scope of habeas review.  Thus, to prevent the exception from swallowing the rule, we have interpreted the "savings clause" narrowly, reasoning that it must encompass only "limited circumstances."  *In re Jones*, 226 F.3d at 333.  "A contrary rule," we have explained "would effectively nullify" § 2255's specific limitations.  *Id.*; *Lester*, 909 F.3d at 716.

We are not the first panel to confront the "limited circumstances" that may justify resort to § 2241.  *In re Jones*, 226 F.3d at 333.  Recognizing that § 2255(e) "provides only the tightest alleyway" to relief, *Lester*, 909 F.3d at 716, our Circuit has applied two tests— one to convictions, another to sentences—to assess whether the "savings clause" is satisfied.[4]

---

[4] The government objects to our entire line of "savings clause" cases, arguing that our precedents deviate from the text and structure of § 2255.  Appellee Br. 17–19.  Under the government's theory, the "savings clause" bars attacks on criminal judgements under § 2241.  *See McCarthan*, 851 F.3d 1076; *Prost*, 636 F.3d 578.  Under this reading, the "savings clause" is reserved for distinct circumstances—such as imprisonment without a criminal judgement.  *Cf. Boumediene*, 553 U.S. at 739 (discussing the availability of § 2241 relief to aliens detained as enemy combatants).  But as the government acknowledges, this is an argument for our en banc court (or the Supreme Court).  This panel is powerless to overturn our precedents—no matter the force of a litigant's contentions.  *See McMellon v. United States*, 387 F.3d 329, 332 (4th Cir. 2004) (en banc).

### 1. The two "savings clause" tests

We first considered the kinds of collateral attacks that may trigger the "savings clause" in *In re Jones*, 226 F.3d at 329. In that case, petitioner Byron Jones was convicted of using a firearm during a drug offense in violation of 18 U.S.C. § 924(c)(1). After *Bailey v. United States*, 516 U.S. 137 (1995) overruled our Circuit precedent on the "use" of firearm during a drug offense, Jones sought habeas relief claiming *Bailey* invalidated his convictions. *See In re Jones*, 226 F.3d at 329–30. Jones, however, had already filed an initial § 2255 motion. And since *Bailey* was not a constitutional decision and Jones lacked newly discovered evidence, he could not satisfy § 2255(h)'s successive petition requirements. Thus, Jones found himself imprisoned for conduct that, after *Bailey*, was noncriminal, but § 2255(h) barred habeas relief. *See also Hahn v. Moseley*, 931 F.3d 295, 301–04 (4th Cir. 2019); *Rice*, 617 F.3d at 807.

Given Jones's predicament, we asked whether the "savings clause" permitted him to proceed under § 2241. On one hand, we explained that § 2255 cannot be "inadequate or ineffective merely because an individual is unable to obtain relief." *In re Jones*, 226 F.3d at 333 (citing *Charles*, 190 F.3d at 756, and *In re Vial*, 115 F.3d at 1194 n.5). But on the other, we suggested that "there must exist some circumstance in which resort to § 2241 would be permissible; otherwise, the savings clause itself would be meaningless." *In re Jones*, 226 F.3d at 333.

To resolve this tension, the *Jones* Court devised a three-part test defining the "limited circumstances" under which § 2255 will be "inadequate to test the legality of the prisoner's detention." *Id.* First, at the time of conviction, the settled law of this Circuit or

14

the Supreme Court must have established the conviction's legality. Second, after the prisoner's direct appeal and previous § 2255 motion(s), the substantive law must have changed so that the conduct of which the prisoner was convicted is no longer criminal. And third, the prisoner cannot satisfy the gatekeeping provisions of § 2255(h) because the new rule is not of constitutional law. Applying this "savings clause" test, we found that Jones satisfied these requirements. We accordingly permitted his petition to proceed in the form of a § 2241 application.

Eighteen years later, we revisited the "savings clause" in *Wheeler*, 886 F.3d 415. In that case, Gerald Wheeler filed a § 2241 application to challenge his sentence after our en banc court decided *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011). *Simmons* held that a prior drug conviction should be classified as a "felony drug offense" only if the defendant's sentence exceeded a year. *Id*. at 243–47. This overruled the prior law of our Circuit, which determined whether a prior drug conviction was a felony based on the maximum aggravated sentence for that offense.

Wheeler's prior drug conviction had a potential sentence of more than one year, but his actual sentence was for less than a year. Because he was sentenced under the pre-*Simmons* rule, Wheeler's prior drug conviction was classified as a "felony drug offense" and triggered a ten-year-mandatory minimum. *Wheeler*, 886 F.3d at 420. Had Wheeler been sentenced after *Simmons*, his prior offense would not have been considered a "felony drug conviction," he would have faced no mandatory minimum, and the bottom of his Sentencing Guidelines' range "would have been five years – half of the sentence to which he was subjected." *Id*. at 430. Wheeler moved to challenge his sentence given our decision

15

in *Simmons*, but he had already filed an initial § 2255 motion. And like Jones, Wheeler could not satisfy the successive petition requirements of § 2255(h).

Our Court then asked whether the "savings clause" required us to extend the *Jones* test—governing convictions—to Wheeler's collateral attack on his sentence. In so asking, our analysis centered on § 2255(e)'s purpose and text, as well as the history of the Great Writ. The *Wheeler* court explained that language of the savings clause encompassed attacks on sentences. Because the "savings clause" relates to "'detention,'" and Congress "did not use the word[s] 'conviction' or 'offense,' as it did elsewhere in § 2255(e)," we reasoned that § 2255(e) "'does not limit its scope to testing the legality of the underlying criminal conviction.'" *Id.* at 427-28 (quoting *Brown v. Caraway*, 719 F.3d 583, 588 (7th Cir. 2013)). *But see Hueso v. Barnhart*, 948 F.3d 324, 338 (6th Cir. 2020) (rejecting *Wheeler*'s textual interpretation). We also reasoned that "the Supreme Court has long recognized a right to traditional habeas corpus relief based on an illegally extended sentence." *Wheeler*, 886 F.3d at 428. And since § 2255 was designed to streamline—not to limit—the writ of habeas corpus, we explained that our interpretation of the "savings clause" should respect the traditional scope of habeas relief. *Id.* at 427 (quoting *In re Jones*, 226 F.3d at 332).

For these reasons, *Wheeler* announced, "The New Savings Clause Test for Erroneous Sentences." 886 F.3d at 428. That test has four parts. First, "at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of a sentence." *Id.* at 429. Second, after the prisoner's direct appeal and previous § 2255 motion(s), "the aforementioned settled substantive law changed and was deemed to apply

16

retroactively on collateral review." *Id.* Third, "the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions" because the rule is not one of constitutional law. *Id.* And fourth, based on the retroactive change in the substantive law, "the sentence now presents an error sufficiently grave to be deemed a fundamental defect." *Id.*

Based on the "savings clause" and these precedents, Farkas asserts that he may challenge his conviction under § 2241. We disagree.

### 2. Farkas does not satisfy this Court's "savings clause" tests

### (a) Construing Farkas's claims

To begin with, we must pin down the substance of Farkas's claim before we can evaluate whether it passes either test. Because different rules apply to different avenues of habeas relief, AEDPA "elevate[s] the degree of caution that courts must exercise when determining how to classify prisoner pleadings." *United States v. Winestock*, 340 F.3d 200, 203 (4th Cir. 2003), *abrogated in part on other grounds by United States v. McRae*, 793 F.3d 392 (4th Cir. 2015); *see Trenkler v. United States*, 536 F.3d 85, 97 (1st Cir. 2008) (In habeas cases, "courts must be guided by the precept that substance trumps form."). AEDPA's strict statutory requirements "may not be circumvented through creative pleading." *United States v. Lambros*, 404 F.3d 1034, 1036 (8th Cir. 2005).

In his § 2241 application, Farkas seeks habeas relief based on "*Chamberlain* . . . and on the violation of his Sixth Amendment right to counsel of choice." J.A. 5. So at first glance, Farkas appears to assert two claims: (1) a constitutional violation based on the Sixth Amendment and (2) a statutory violation based on our new interpretation of 21 U.SC.

17

§ 853(e) adopted in *Chamberlain*. But in his opening brief, Farkas characterizes his claim as "the erroneous deprivation of his [Sixth Amendment] right to counsel of choice resulting from a statutorily unauthorized pretrial restraining order." Appellant Br. 29. This formulation sounds more squarely in a violation of the Sixth Amendment: government action allegedly deprived Farkas of his right to counsel of choice.

Seizing on the latter characterization, the government contends that Farkas's claim is constitutional and that § 2255 is adequate to address constitutional claims. Indeed, Farkas's claim that the restraint of his untainted assets violated his right to counsel of choice is *precisely* the Sixth Amendment theory that the Supreme Court endorsed in *Luis*. 136 S. Ct. at 1088 ("[T]he pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment.").

But in reply, Farkas doubles down on the supposed statutory nature of his § 2241 claim: "Farkas is not bringing a standalone constitutional claim. He is challenging his conviction on the ground that misapplication of a statute (21 U.S.C. § 853(e)) caused a fundamental defect in the proceeding and that *United States v. Chamberlain* . . . exposed this statutory error." Appellant Reply Br. 12–13, 14 n.1. Even so, Farkas continues to assert that this statutory error is *fundamental* under *Wheeler*'s fourth prong only because it violated "'the right to counsel of choice,'" protected by the Sixth Amendment. *Id.* at 16 (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006) (holding that a

18

violation of the *Sixth Amendment* right to counsel of choice does not require showing prejudice)).[5]

Construing Farkas's application in the light most favorable to him, we read his petition to bring both a constitutional claim and a statutory claim. First, we take the petition to assert that Farkas is entitled to relief based on a Sixth Amendment violation arising when the government froze untainted assets needed to hire counsel of choice. Second, we take Farkas to argue that he is entitled to relief because the trial court's application of 21 U.S.C. § 853(e) was erroneous. We consider each claim in turn.

### (b)    Farkas's Sixth Amendment claim does not satisfy the "savings clause"

Farkas's Sixth Amendment claim fails our "savings clause" tests—neither permit constitutional claims. *See In re Jones*, 226 F.3d at 334 (factor three); *Wheeler*, 886 F.3d at 429 (factor three). As *Jones* and *Wheeler* respect, § 2255 is not "inadequate or ineffective" for testing constitutional claims. § 2255(e). An initial § 2255 motion provides relief for constitutional errors. *See* § 2255(a), (b); *Daniels v. United States*, 532 U.S. 374, 377, 379

---

[5] The government argues that Farkas cannot have it both ways: Farkas may assert a constitutional claim, a statutory claim, or both. But according to the government, he cannot bootstrap constitutional significance to a statutory error to avoid § 2255(h)'s successive petition requirements. *See* Appellee Br. 36–37; *cf. Melton v. United States*, 359 F.3d 855, 857 (7th Cir. 2004) ("Any motion filed in the district court that imposed the sentence, and substantively within the scope of § 2255 ¶ 1, *is* a motion under § 2255, no matter what title the prisoner plasters on the cover."). On this theory, the "savings clause" precludes challenges to statutory claims with constitutional significance because § 2255 is fully adequate to address claims with constitutional import. *See In re Jones*, 226 F.3d at 334 (factor three); *Wheeler*, 886 F.3d at 429 (factor three). We have no need to address this argument today. Taking Farkas's claims as he brings them, they fail to satisfy our "savings clause" tests.

(2001). For a successive § 2255 motion, § 2255(h)(2) speaks exactingly to the circumstances that permit a constitutional claim (as described above). *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 648 (2012) (specific limitations control over general rules). And as we have recognized, allowing a § 2241 application for a constitutional claim that does not fit within the narrow confines of § 2255(h)(2) would read § 2255(h)(2)'s gatekeeping provisions right out of the statute. *In re Jones*, 226 F.3d at 333 ("A contrary rule would effectively nullify the gatekeeping provisions.") (citing *United States v. Barrett*, 178 F.3d 34, 50 (1st Cir. 1999) and *In re Davenport*, 147 F.3d 605, 608 (7th Cir. 1998)); *see also In re Vial*, 115 F.3d at 1194 n.5 ("[T]he remedy afforded by § 2255 is not rendered inadequate or ineffective merely because an individual has been unable to obtain relief under that provision."). So Farkas's Sixth Amendment claim must be dismissed for lack of jurisdiction.

### (c) Farkas's statutory claim does not satisfy the "savings clause"

Farkas's statutory claim similarly fails our "savings clause" tests. First, we consider the *Jones* test for challenges to convictions. *Jones*'s second factor requires the substantive law to change "such that the conduct of which the prisoner was convicted is deemed not to be criminal." 226 F.3d at 334. But here, there is no question that Farkas's illegal conduct—bank fraud, wire fraud, and securities fraud—remains criminal. *See* 18 U.S.C. §§ 1344, 1343, 1348; *see also Hahn*, 931 F.3d at 304-05 (Wynn, J., concurring) ("The plain meaning of the phrase 'the conduct of which the prisoner was convicted' refers to the conduct that

20

a jury found beyond a reasonable doubt supported the prisoner's conviction."). As a result, Farkas's statutory claim cannot pass the *Jones* test.

Second, we turn to *Wheeler*'s "New Savings Clause Test for Erroneous Sentences." 886 F.3d at 428. But Farkas does not challenge his *sentence*—he purports to challenge his *convictions*. As Farkas explains, he believes his conviction is invalid based on an erroneous pretrial ruling seizing his assets. The district court properly applied *Jones* to that challenge.

Contrary to Farkas's claims, *Wheeler* did not displace *Jones* for § 2241 challenges to a conviction. In the Fourth Circuit, we have established two separate tests that reflect the limited circumstances under which a convicted prisoner may invoke § 2255(e). The *Jones* test governs challenges to criminal convictions. *Jones*, 226 F.3d at 333–34; *see also Lester*, 909 F.3d at 711 (*Jones* applies when "the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal.") (internal quotations omitted); *Hahn*, 931 F.3d at 300 (*Jones* "holds that § 2255 is inadequate and ineffective to test the legality of a conviction" when three requirements are met.) (internal quotations); *Wheeler*, 886 F.3d at 428 ("*Jones* contemplates a change in 'substantive law' that renders noncriminal the conduct by which a prisoner was convicted."). And the *Wheeler* test applies for challenges to the length of a criminal sentence for an otherwise valid conviction. *Id.*; *see also Lester*, 909 F.3d at 712 (*Wheeler* "outlined when the savings clause may be used to challenge erroneous sentences.").

Since *Wheeler*, we have policed the line between *Jones* and *Wheeler*, applying the former to claimed § 2241 challenges to convictions, *Hahn*, 931 F.3d at 301–04, and the

21

latter to sentences, *Lester*, 909 F.3d at 712. Contrary to Farkas's assertions, these tests are not one in the same: By design, they each provide a limited exception to the general rule that convicted federal prisoners must challenge their detention through § 2255. Section 2255(e) "provide[s] only the tightest alleyway to relief." *Lester*, 909 F.3d at 716. In other words, *Wheeler* and *Jones* are not guideposts marking a broad path yet to be cut—each is a narrow, well-delineated trail by which certain petitioners may pursue appropriate relief. A petitioner must meet one of those two exceptions and, because Farkas does not, the "savings clause" is not available to him.

*     *     *

The writ of habeas corpus holds a foundational place in our Republic. At heart, it secures the fundamental right of personal liberty from unlawful government action. When a prisoner seeks the Great Writ, the federal courts have a key role to play in confirming that the causes and the extent of his detention are justified. But our review must be performed as statutorily prescribed. AEDPA requires all convicted federal prisoners seeking habeas relief to proceed under 28 U.S.C. § 2255. Farkas fails to satisfy the requirements of § 2255(e)'s "savings clause," so he must follow this general rule. The judgement of the district court is

AFFIRMED.