**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 20-159**

───────────────

In re: RANDOLPH LEE MCNEILL,

     Movant.

───────────────

On Motion for Authorization to File Successive § 2255 Motion in the United States District Court for the Eastern District of North Carolina, at Raleigh.

───────────────

Argued:  March 9, 2023                        Decided:  May 22, 2023

───────────────

Before GREGORY, Chief Judge, WYNN, Circuit Judge, and FLOYD, Senior Circuit Judge.

───────────────

Motion denied by published opinion.  Judge Wynn wrote the opinion, in which Chief Judge Gregory and Senior Judge Floyd joined.

───────────────

**ARGUED:**  Nathaniel Wilson Reisinger, WILMERHALE LLP, Washington, D.C., for Movant.  Rudy E. Renfer, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Respondent.  **ON BRIEF:**  Catherine M.A. Carroll, Alex Tucker Stewart, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., for Movant.  Michael F. Easley, Jr., United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Respondent.

───────────────

WYNN, Circuit Judge:

In 2009, a jury convicted Randolph Lee McNeill of knowingly possessing a firearm as a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). McNeill was sentenced to 180 months' imprisonment. His direct appeal and initial application for postconviction relief under 28 U.S.C. § 2255 were unsuccessful. Now, McNeill moves this Court for authorization to file a second or successive § 2255 application premised on the Supreme Court's decision in *Rehaif v. United States*. And he argues in the alternative that, if his motion is denied, he will be authorized to file a traditional § 2241 habeas application through § 2255(e)'s savings clause.

We deny McNeill's motion for authorization to file a second or successive § 2255 application because *Rehaif* did not announce a constitutional rule. But as a consequence of our determination that McNeill may not file a § 2255 application, we hold that he *may* file a § 2241 application under the savings clause.

I.

McNeill was charged with "knowingly possess[ing], in and affecting commerce, a firearm," "having been convicted of a crime punishable by imprisonment for a term exceeding one year," in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[1] J.A. 11.[2]

---

[1] 18 U.S.C. § 922(g)(1) (2008) ("It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . [to] possess in or affecting commerce, any firearm or ammunition . . . ."); *id.* § 924(a)(2) (2008) ("Whoever knowingly violates" § 922(g) "shall be fined as provided in this title, imprisoned not more than 10 years, or both.").

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

2

At trial, the parties stipulated that, "as of September 2, 2008, the Defendant had previously been convicted of a felony; that is, a crime punishable by a term of imprisonment exceeding one year and that the Defendant's civil rights to possess a firearm have not been restored." J.A. 27. The government did not introduce evidence that McNeill knew of his felon status at the time of the offense conduct. McNeill was convicted by a jury and sentenced to 180 months' imprisonment. He appealed, and this Court affirmed. *United States v. McNeill*, 419 F. App'x 427 (4th Cir. 2011) (per curiam).

In 2012, McNeill filed a motion to vacate his conviction under 28 U.S.C. § 2255. The government moved to dismiss the motion, and the district court granted the motion to dismiss and denied a certificate of appealability. McNeill subsequently filed three motions in this Court for authorization to file a second or successive § 2255 application, in February 2016, July 2016, and April 2019; all were denied.

In June 2019, the United States Supreme Court decided *Rehaif v. United States*, 139 S. Ct. 2191 (2019). In *Rehaif*, the Court held that, in order for a defendant to be convicted of "knowingly" possessing a firearm as an individual prohibited from possessing a firearm in violation of §§ 922(g) and 924(a)(2), the government must prove both "that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Id.* at 2194.

On February 27, 2020, McNeill filed another motion for authorization to file a second or successive § 2255 motion based on a *Rehaif* claim and others. This Court appointed counsel, who filed a brief arguing that McNeill should be granted authorization

3

to file a successive § 2255 motion based on the *Rehaif* claim. The 2020 motion for authorization is now before us.

II.

A.

The writ of habeas corpus is "a writ antecedent to statute," *Farkas v. Butner*, 972 F.3d 548, 553 (4th Cir. 2020) (quoting *Rasul v. Bush*, 542 U.S. 466, 473 (2004)), which "secured the 'natural inherent right' of personal liberty," and "'which could not be surrendered or forfeited' save for the commission of a crime," *id.* (quoting 3 *William Blackstone*, *Commentaries on the Laws of England* 133 (1st ed. 1768)). Although the writ "existed before statute, its contours have been molded by the legislature over time." *Id.* In 1867, Congress codified the right to pursue habeas relief, which is now found at 28 U.S.C. § 2241. *United States v. Hayman*, 342 U.S. 205, 211 (1952).

In the aftermath of the 1867 enactment, the federal courts saw a substantial increase in the number of applications for habeas relief, including applications that were "repetitious and patently frivolous." *Id.* at 212 (footnote omitted). And because the statute required applications to be filed in the district of confinement, the increased volume of applications was concentrated in the districts containing major federal penal institutions, taxing those district courts. *Id.* at 213–14.

To address these challenges, in 1948, Congress created a new statutory path for federal prisoners to collaterally attack their convictions, codified at 28 U.S.C. § 2255, which allowed individuals in federal custody to pursue relief in the sentencing court, rather than the court for the district in which they were confined. *Id.* at 214–19; *see* Act of June

4

25, 1948, Pub. L. No. 80-773, § 2255, 62 Stat. 869, 967–968. The "sole purpose" of § 2255 "was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." *Hayman*, 342 U.S. at 219.

Section 2255 permits individuals who have been convicted of federal crimes and are consequently in federal custody,[3] and who have exhausted their direct appeals, to move the sentencing court to vacate, set aside, or correct their sentence on the grounds that the sentence "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

Where an individual is eligible to pursue collateral review through § 2255, that statute generally provides the *only* mechanism available to him, *Farkas*, 972 F.3d at 554, with one exception: § 2255(e)—sometimes called the "savings clause"—"permits a prisoner to sidestep" the § 2255 process "and instead file a traditional § 2241 habeas application if it 'appears that the [§ 2255] remedy by motion is inadequate or ineffective to test the legality of his detention.'" *Id.* at 555 (quoting 28 U.S.C. § 2255(e)).

---

[3] McNeill was released from prison on March 9, 2023, beginning a term of supervised release. Although § 2255 requires a prisoner to be "in custody" in order to employ its procedures, the custody requirement is assessed at the time of filing, and is in any event satisfied by serving a term of supervised release. *United States v. Swaby*, 855 F.3d 233, 238–39 (4th Cir. 2017). Thus, McNeill satisfies the custody requirement. And the controversy here is not mooted by McNeill's release from prison: the "mere 'possibility of consequences collateral to the imposition of sentence is sufficiently substantial to justify [the Court's] dealing with the merits.'" *Plymail v. Mirandy*, 8 F.4th 308, 315 (4th Cir. 2021) (quoting *Pollard v. United States*, 352 U.S. 354, 358 (1957)).

More recent changes to the statutory scheme have narrowed the circumstances in which a federal prisoner may collaterally attack his conviction. After the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, once a person in federal custody has filed an initial § 2255 motion, he must clear additional hurdles to file a second or successive one. Specifically, before filing the second or successive motion in the sentencing court, he must obtain a certification from the court of appeals that the motion contains either of the following:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h); *accord id.* § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."). In turn, the court of appeals may authorize the second or successive application only upon finding that the applicant has made a *prima facie* showing that he satisfies the statutory requirements. *Id.* § 2244(b)(3)(C).

Although AEDPA worked a major change to the availability of collateral review of federal convictions, the traditional statutory habeas path—§ 2241—remains available when the remedy provided by § 2255 is "inadequate or ineffective to test the legality" of detention of an individual in federal custody. *Id.* § 2255(e). And AEDPA's constraints on

second or successive applications do not apply to traditional § 2241 habeas applications filed pursuant to the § 2255(e) savings clause. *Farkas*, 972 F.3d at 555.

B.

In this case, because McNeill filed an initial § 2255 motion in 2012, authorization from this Court is required before McNeill may file a second or successive § 2255 motion. McNeill argues that this Court should grant him authorization to file a successive § 2255 application based on *Rehaif* because, he asserts, that case announced "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). We disagree.

To be sure, *Rehaif* announced a new rule. "[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301 (1989). Put differently, a rule is "new" when "it breaks new ground or imposes a new obligation on the States or the Federal Government." *Id.* The rule announced in *Rehaif* was not dictated by prior precedent; indeed, *Rehaif* "overturn[ed] the long-established interpretation" of the statute "that ha[d] been adopted by every single Court of Appeals to address the question," *Rehaif*, 139 S. Ct. at 2201 (Alito, J., dissenting), including the Fourth Circuit, *see United States v. Langley*, 62 F.3d 602, 606 (4th Cir. 1995) (en banc) (holding that the government was not required to prove that the defendant knew of his status as a felon in order to secure a conviction under §§ 922(g)(1) and 924(a)). *Rehaif* therefore abrogated our precedent on that score. *United States v. Lockhart*, 947 F.3d 187, 196 (4th Cir. 2020) (en banc) (recognizing that *Rehaif* abrogated *Langley*). And after *Rehaif*, a felon cannot be convicted of knowingly possessing a firearm

7

under §§ 922(g)(1) and 924(a)(2) unless he knew he was a felon, elucidating an additional element that the government must prove to secure a conviction. *See Rehaif*, 139 S. Ct. at 2194 (majority op.). Thus, *Rehaif* announced a new rule.

But *Rehaif* did not announce a new *constitutional* rule, as required by § 2255(h)(2). In *Rehaif*, the Supreme Court analyzed the statutory language of 18 U.S.C. § 924(a)(2), which provides penalties for anyone who "knowingly violates" § 922(g). Section 922(g) makes it unlawful for any person who falls into any of nine categories of persons to, *inter alia*, possess, in or affecting commerce, a firearm. One such category encompasses those who "ha[ve] been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1).

*Rehaif* concerned "the scope of the word 'knowingly'" in § 924(a)(2). *Rehaif*, 139 S. Ct. at 2194. Specifically, "[d]oes it mean that the Government must prove that a defendant knew both that he engaged in the relevant conduct (that he possessed a firearm) and also that he fell within the relevant status (that he was a felon, an alien unlawfully in this country, or the like)?" *Id.* The Court held that "the word 'knowingly' applies both to the defendant's conduct and to the defendant's status." *Id.* In reaching this conclusion, the Court examined congressional intent, *id.* at 2195, and applied "a basic principle that underlies the criminal law, namely, the importance of showing what Blackstone called 'a vicious will,'" *id.* at 2196 (quoting 4 *William Blackstone*, *Commentaries on the Laws of England* 21 (1769)).

McNeill argues that *Rehaif* announced a *constitutional* rule by adding an element that the government must prove under §§ 922(g) and 924(a)(2). His argument goes like

8

this: The Fifth and Sixth Amendments to the Constitution require that an indictment include every element of a charged offense. And those Amendments also require that every element of a crime be submitted to a jury and proven beyond a reasonable doubt. So, when a defendant is convicted based on an indictment that fails to include all elements of the offense, or following a jury trial in which the government fails to prove an element beyond a reasonable doubt, his constitutional rights have been violated. Therefore, McNeill argues, by enumerating a new element that must be proved in prosecutions under §§ 922(g) and 924(a)(2), *Rehaif* announced a rule that sounds in the Fifth and Sixth Amendments to the Constitution—a constitutional rule.

The problem with McNeill's reasoning is that we have already addressed—and rejected—the argument that a new rule is a constitutional one simply because it has, as McNeill puts it, "constitutional implications." Opening Br. at 7. In *In re Vial*, this Court, sitting en banc, addressed whether the Supreme Court's decision in *Bailey v. United States* created a new rule of constitutional law. 115 F.3d 1192 (4th Cir. 1997) (en banc).

In *Bailey*, the Supreme Court assessed the meaning of "use" in a statute imposing a minimum prison term for any person who "during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm." *Bailey v. United States*, 516 U.S. 137, 138 (1995) (quoting 18 U.S.C. § 924(c)(1)). The Court examined "the language of the statute," *id.* at 144, the "bare meaning of the word ['use']" and "its placement and purpose in the statutory scheme," *id.* at 145, and the "amendment history of § 924(c)," which "casts further light on Congress' intended meaning," *id.* at 147. Relying on these sources of insight, the Court held that "'use' must connote more than mere possession of a firearm by

9

a person who commits a drug offense," instead requiring "an *active employment* of the firearm by the defendant." *Id.* at 143.

The issue of whether *Bailey* announced a constitutional rule because its holding was "derived from constitutional principles," was presented to this Court in *In re Vial*. 115 F.3d at 1195. Specifically, Vial argued that the *Bailey* holding was a constitutional one because it relied on the rule of lenity, which itself relies on "at least four values of constitutional gravity: fair notice, majoritarian policy-making, federalism, and . . . the separation of powers." *Id.* (quoting *In re Vial* Movant's Br. at 7). But we rejected this argument because "the *Bailey* Court neither referred to, nor relied upon, any provision of the Constitution as support for its holding." *Id.* Thus, even if the Court's holding resonated with constitutional themes, the fact that the Supreme Court did not so much as mention the Constitution or constitutional principles defeated Vial's argument.

So too here. McNeill argues that *Rehaif* announced a constitutional rule because it implicates constitutional principles, but the *Rehaif* Court did not once mention the Constitution. *See Rehaif*, 139 S. Ct. at 2194–2200. And, relying on our reasoning from *In re Vial*, we will not find that a rule is a constitutional one merely because it is arguably undergirded by constitutional themes.[4]

---

[4] At oral argument, counsel for McNeill argued that *In re Vial* could be distinguished from the present case because of differences between the underlying Supreme Court cases at issue—*Bailey* and *Rehaif*. Specifically, counsel asserted that *Bailey* involved only the interpretation of an *existing* statutory element, whereas *Rehaif* created a *new* statutory element, so the *In re Vial* rule should not apply. We find this distinction unpersuasive. Both *Bailey* and *Rehaif* interpreted the relevant statutes and clarified what the government must prove. We therefore see no reason that the *In re Vial* rule should not be dispositive here.

10

Thus, *Rehaif* did not announce a constitutional rule. This conclusion accords with the conclusions of every other circuit to have reached the question of whether *Rehaif* provides a basis for filing a second or successive § 2255 application. *See Mata v. United States*, 969 F.3d 91, 94 (2d Cir. 2020) (per curiam) (explaining that because "*Rehaif* involved only a question of statutory interpretation and thus did not announce a new rule of constitutional law within the meaning of 28 U.S.C. § 2255(h)(2)," *Rehaif* could not "serve as a basis for a second or successive motion brought under 28 U.S.C. § 2255"); *In re Sampson*, 954 F.3d 159, 161 (3d Cir. 2020) ("First and foremost, *Rehaif* did not state a rule of constitutional law at all."); *Khamisi-El v. United States*, 800 F. App'x 344, 349 (6th Cir. 2020) ("The rule stated in *Rehaif* is a matter of statutory interpretation, not a 'new rule of constitutional law.'" (quoting *In re Palacios*, 931 F.3d 1314, 1315 (11th Cir. 2019))); *Tate v. United States*, 982 F.3d 1226, 1227 (9th Cir. 2020) (per curiam) ("Tate has not made a prima facie showing that *Rehaif* announced a new constitutional rule."); *In re Palacios*, 931 F.3d at 1315 (11th Cir.) ("*Rehaif* . . . did not announce a 'new rule of constitutional law'. . . .").

Because the new rule McNeill seeks to rely on is not a constitutional rule, he cannot satisfy § 2255(h)(2)'s gatekeeping requirements, and his motion for authorization must be denied.

## C.

But our inquiry does not end there because as we explained above, Congress left open the possibility that an individual in federal custody could file a traditional § 2241 habeas application in limited circumstances. To that end, McNeill argues that, if we find

11

he cannot proceed to file a successive § 2255 application, it follows that he may proceed instead under 28 U.S.C. § 2255(e)—the "savings clause." We agree.

As discussed, § 2255(e) provides that a person in federal custody who is eligible to apply for relief under § 2255 but has failed to do so or has been denied relief may not file an application for a writ of habeas corpus, *unless* the remedy provided by a § 2255 motion would be "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). If the § 2255 motion is inadequate, the individual may file a habeas petition under § 2241 in the district in which he is confined. *Id.* § 2241; *accord In re Jones*, 226 F.3d 328, 332–33 (4th Cir. 2000).

But § 2255 "is not inadequate or ineffective merely because an individual is unable to obtain relief under that provision." *In re Jones*, 226 F.3d at 333. Rather, § 2255 is inadequate or ineffective, and thus a person in federal custody is authorized to challenge his conviction through a § 2241 application under the savings clause, when three conditions are satisfied: first, "at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction;" second, "subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal;" and third, "the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law." *Id.* at 333–34. McNeill can satisfy these three elements.

As for the first and third requirements of the *In re Jones* test, the above analysis of the § 2255(h)(2) test—demonstrating that *Rehaif* announced a new, non-constitutional rule—makes clear that they are easily met.

12

That leaves the second element, which requires that, "subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal." *Id.* at 334. Although *Rehaif* plainly changed the law of this circuit, *Lockhart*, 947 F.3d at 196, and did so years after McNeill's direct appeal and first § 2255 motion,[5] the government contends that it did not effect a substantive change in the law that rendered the conduct of which McNeill was convicted non-criminal. We disagree.

The government argues that "possession of a firearm by a convicted felon[] remains a criminal offense today just as it was in 2008 and 2009." Government's Br. at 19. Therefore, it argues, the *conduct* of which McNeill was convicted is still criminal. The government points out that a number of district courts in this circuit have taken this view. *See, e.g.*, *Erby v. Breckon*, No. 7:18-cv-00588, 2020 WL 1443154, at *7 (W.D. Va. Mar. 24, 2020) (citing district courts in the Fourth Circuit that have concluded that *Rehaif* "did not change substantive law because the conduct for which the petitioner was convicted is still illegal").

It is true that, after *Rehaif*, possessing a firearm as a felon remains criminal under § 922(g). But the government did not charge McNeill with simply "possessing" a firearm in violation of § 922(g). It charged him with "*knowingly*" doing so under §§ 922(g) and

---

[5] We decided McNeill's direct appeal in 2011, *McNeill*, 419 F. App'x at 427, and the Supreme Court denied certiorari that year, *McNeill v. United States*, 565 U.S. 877 (2011) (mem.). McNeill's first § 2255 motion was dismissed in 2012. *McNeill v. United States*, 5:09–CR–080–1BO, 5:12–CV–312–BO, 2012 WL 4486224, at *1 (E.D.N.C. Sept. 28, 2012). The Supreme Court decided *Rehaif* in 2019.

13

924(a). That McNeill's conviction might have survived *Rehaif* if the government had charged him under § 922(g) alone is of no moment: the government chose not to do so.

Indeed, the reasoning of *Rehaif* itself provides that possession of the firearm cannot be disentangled from the scienter requirement for individuals charged under §§ 922(g) and 924(a)(2). In *Rehaif*, the Supreme Court noted that "the text of § 922(g) . . . lists the elements that make a defendant's behavior criminal." 139 S. Ct. at 2196. But, the Court explained, the addition of § 924(a)(2) meant that the "knowing" requirement must be applied to each of those elements, because "[s]cienter requirements" help to "separate those who understand the wrongful nature of their act from those who do not," *id.* (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73 n.3 (1994)), and "[w]ithout knowledge of [the relevant] status, the defendant may well lack the intent needed to make his behavior wrongful," *id.* at 2197. Thus, although the conduct of possessing a firearm remains a valid part of the criminal offense with which McNeill was charged, proving that conduct *is not enough* to secure a conviction under §§ 922(g)(1) and 924(a)(2) after *Rehaif* unless the government *also* proves that the defendant knew he was in the class of persons barred from doing so.

This Court's precedent further supports the conclusion that McNeill can satisfy the second *In re Jones* prong. In *Hahn v. Moseley*, we applied the *In re Jones* test, considering whether a decision by the Tenth Circuit rendered the conduct of which the petitioner had

14

been convicted no longer criminal.[6] 931 F.3d 295, 301 (4th Cir. 2019). There, the petitioner had been convicted of two § 924(c) charges related to possessing firearms in furtherance of certain drug activity, both based on possession of a single gun collection. *Id.* at 298 (citing 18 U.S.C. § 924(c)(1)(A)). Years after Hahn's conviction by a jury, the Tenth Circuit held in *United States v. Rentz* that, "as a matter of statutory construction," "*each* § 924(c) charge 'requires an *independent* use, carry, or possession,'" *id.* at 299 (quoting *United States v. Rentz*, 777 F.3d 1105, 1115 (10th Cir. 2015) (en banc)) (emphasis added), and therefore that "multiple charges under § 924(c) based on the same conduct" were improper, *id.* We held that *Rentz* constituted a substantial change in the law, rendering "non-criminal the conduct on which [Hahn's] second § 924(c) conviction was based"— that is, possession of the same gun collection as the first § 924(c) charge—satisfying the second prong of *In re Jones*, even though possessing firearms in furtherance of certain drug activity generally remained illegal. *Id.* at 301–03. Thus, in *Hahn*, the change in the law went to the "statutory framework" for charging § 924(c) offenses, *id.* at 299—in other words, what the government had to charge and prove to secure a conviction. So too here.

---

[6] We applied Tenth Circuit law because the crimes occurred in New Mexico and Hahn was therefore convicted and sentenced in the District of New Mexico. *Hahn*, 931 F.3d at 297–98. He filed the § 2241 petition at issue in the case in the District of South Carolina, where he was detained, and this Court therefore had jurisdiction over his appeal. *Id.* at 300.

Therefore, McNeill can satisfy the *In re Jones* test and may file a § 2241 application in the district of his confinement pursuant to § 2255(e).[7]

III.

Because *Rehaif* did not announce a constitutional rule, we deny McNeill's motion for authorization to file a second or successive § 2255 application under § 2255(h)(2). And because McNeill cannot proceed under § 2255(h)(2) because his motion does not rely on a new constitutional rule, he may proceed to file a savings clause application under § 2255(e).

*MOTION DENIED*

---

[7] The government asserts that because McNeill does not need authorization from this Court before filing a § 2241 application under the savings clause, we may not grant authorization to proceed under the savings clause. Instead, the government argues, McNeill must simply proceed to file his § 2241 petition with the district court. The government correctly notes that, whereas a prisoner must obtain authorization from this Court before filing a second or successive § 2255 application, *see* 28 U.S.C. § 2244(b)(3)(A), no such authorization is required to file a savings-clause application, *see id.* §§ 2241, 2255(e). But in rendering our decision today, we simply tread the same ground already trod by this Court in *In re Jones*. 226 F.3d at 334 (holding, in the context of a motion for authorization to file a second or successive § 2255 application, that "§ 2255 [was] inadequate or ineffective to test the legality of Jones' conviction" and therefore that Jones was "entitled to file a habeas petition in the district of his confinement pursuant to § 2241").